# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BUCK MOUNTAIN OWNERS' )  NO. 67714-4-I
ASSOCIATION, a Washington )
nonprofit corporation, )
)  DIVISION ONE
Respondent, )
)
v. )
)
GLENN PRESTWICH and BARBARA )
BENTLEY, his spouse, and their marital )
community, individually and as trustees )  ORDER GRANTING
of the BENTLEY-PRESTWICH LIVING )  MOTION TO PUBLISH
TRUST, )
Appellants, )
)
v. )
)
J. MICHAEL STARR and RICHARD U. )
STARR, trustees, and the JACK M. )
STARR CREDIT SHELTER TRUST, )
)
Respondents. )
_____ )

The respondent, Buck Mountain Owners' Association, has filed a motion to

publish opinion filed March 4, 2013, and the court has determined that the motion

should be granted; therefore it is

ORDERED that respondent's motion to publish opinion is granted.

DATED this 30th day of April 2013.

FOR THE PANEL:

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BUCK MOUNTAIN OWNERS'
ASSOCIATION, a Washington
nonprofit corporation,

     Respondent,

     v.

GLENN PRESTWICH and BARBARA
BENTLEY, his spouse, and their marital
community, individually and as trustees
of the BENTLEY-PRESTWICH LIVING
TRUST,

     Appellants,

     v.

J. MICHAEL STARR and RICHARD U.
STARR, trustees, and the JACK M.
STARR CREDIT SHELTER TRUST,

     Respondents.

NO. 67714-4-I

DIVISION ONE

PUBLISHED OPINION

FILED: March 4, 2013

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2013 MAR -4 AM 9: 37

LAU, J. — Absent an agreement, joint users of a common roadway are obligated to contribute to the costs reasonably incurred for repair and maintenance of the roadway. In this declaratory judgment action, Barbara Bentley and Glenn Prestwich

(Bentley-Prestwich) contend they have no obligation to share repair and maintenance costs for a roadway they indisputably use for ingress and egress. In the alternative, they argue that any obligation imposed should be calculated based on their actual use of the roadway. After a six-day bench trial, the trial court entered judgment against Bentley-Prestwich for past maintenance and repair costs, including interest, late fees, and construction impact fees. It also obligated Bentley-Prestwich to share 62.5 percent of a full share of future maintenance and repair costs and ordered them to execute a binding covenant. We reverse and remand with instructions to strike the binding covenant and otherwise affirm the trial court in all respects consistent with this opinion.

## FACTS

In 1977, Starr and Guynup[1] conveyed by statutory warranty deed[2] approximately 1,200 acres on Orcas Island's Buck Mountain to a group of developers.[3] Starr and Guynup retained a 30-acre L-shaped parcel located within the conveyed land. They also retained a 50-foot-wide access easement (1977 easement) originating at the west entrance to the 1,200-acre conveyance, continuing over Buck Mountain Road and terminating on what is now known as Parker Reef Road.[4]

---

[1] "Starr and Guynup" is shorthand for a group of four individuals: Jack M. Starr, Mary M. Starr, Victor B. Guynup, and Dorothea B. Guynup.

[2] San Juan County auditor's file number 98152.

[3] The developers included: William H. Carlson, David A. MacBryer, Barbara MacBryer, Donald S. Gerard, and M. Arlene Gerard.

[4] Parker Reef Road was formerly known as Sucia View Road. For clarity, we refer to the road as Parker Reef Road.

In 1977, the developers granted a deed of trust to secure the majority of the purchase price.[5] The deed of trust obligated the developers to "construct a serviceable rock roadbed" along the route defined by the 1977 easement. The deed of trust and the statutory warranty deed were silent on the issue of road maintenance.[6]

In 1981, the developers defaulted on their obligation to pay the purchase price. In lieu of foreclosure, Starr and Guynup permitted the developers to reconvey via quit claim deed two 5-acre lots that were part of the original 1,200-acre conveyance.[7] As part of this transaction, Starr and Guynup and the developers executed a declaration of easement (1981 easement) that extinguished the 1977 easement.[8] The 1981 easement stated that the parties "do hereby grant, create, assign, set over, establish and warrant in perpetuity each to the other" a new "non-exclusive" access and utility easement. (Emphasis added.)

The 1981 easement granted Starr and Guynup continued access to their L-shaped parcel through developer-owned land, via Buck Mountain Road and Parker Reef Road. It also permitted the developers to travel through Starr and Guynup's L-shaped parcel to reach adjacent developer-owned land at the end of Parker Reef Road. In essence, it permitted shared use of Buck Mountain Road and Parker Reef

---

[5] San Juan County auditor's file number 98153.

[6] The deed of trust was fully reconveyed (and thus became inoperative) in 1994.

[7] The Starr family acquired one of the lots; the Guynup family acquired the other.

[8] San Juan County auditor's file number 116378.

Road.[9] Like the extinguished 1977 easement, however, the 1981 easement did not allocate responsibility for road maintenance.

Around the same time, the developers attempted to subdivide portions of their land. San Juan County sued the developers, alleging certain lots had been created illegally. As part of a settlement agreement, the developers agreed to form the Buck Mountain Owners' Association. They also agreed to adopt comprehensive regulations governing all land conveyed by the 1977 deed. In 1983, the Association recorded articles of incorporation, bylaws, and covenants, conditions, and restrictions (CCRs).[10]

Following the Association's formation, Starr and Guynup subdivided their L-shaped parcel property into two lots. The Jack M. Starr Credit Shelter Trust (Starr Trust) purchased one of the lots. Starr and Guynup sold the remaining land within the L-shaped parcel to various owners. It is undisputed that the Starr Trust property was not bound by the CCRs.

The Association's bylaws obligated its members to pay assessments to "meet common expenses." Ex. 33, at 9. The Association assessed each of its member parcels a uniform fee for road maintenance. Because the L-shaped parcel lay outside

---

[9] Bentley-Prestwich challenge the trial court's finding that "Defendants' real property benefits from a non-exclusive perpetual easement for access over and across roadways maintained by the plaintiff association for the benefit of plaintiff's 130 member-parcels, and for the benefit of other parcels of real property similarly situated to that of the defendants with whom the plaintiff has road maintenance agreements." They also challenge the finding that "[b]oth the defendants' and the plaintiff's predecessors-in-interest obtained the right [of] access over and across said roadways under [the 1981 easement]." But their opening brief contains no discussion of these findings. Findings 7 and 8 are verities on appeal. Inland Foundry Co. v. Dep't of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001).

[10] See San Juan County auditor's file number 128911. Neither the interpretation nor the applicability of the Association's CCRs is at issue in this appeal.

the Association's "jurisdiction," as defined by its governing documents, the Association entered into separate agreements with some owners within that parcel. These voluntary side agreements obligated the nonmember owners to pay 62.5 percent of the road maintenance fee assessed on member parcels.

The Starr Trust did not enter into a side agreement with the Association. Even so, the Association assessed road maintenance fees on the Starr Trust property. It is undisputed that the Starr Trust and its predecessor-in-interest paid 100 percent of the assessments levied by the Association.

In 2005, the Starr Trust conveyed by statutory warranty deed, subject to the 1981 easement, its lot in the L-shaped parcel to Bentley-Prestwich, as trustees of the Bentley-Prestwich Living Trust. As stated above, the 1981 easement allowed Association members to travel across the L-shaped parcel (now partially owned by Bentley-Prestwich) and simultaneously allowed Bentley-Prestwich to access their newly-acquired land via Buck Mountain Road and Parker Reef Road (both maintained exclusively by the Association).

About the same time Bentley-Prestwich purchased their current property, they also owned property commonly known as the "Klalakamish property" or "Cornell property." They owned the Klalakamish property, located within the Association's jurisdiction, from approximately 2002 to 2006. During this four-year period, they were members of the Association, paid annual assessments in full, and knew the Association maintained 10 miles of roadway. Bentley-Prestwich had full use of these roads and the road easement at issue here. Bentley-Prestwich also knew when they purchased the current property that their sellers (non-Association members) had been paying road

maintenance assessments to the Association based on the closing documents. Bentley-Prestwich paid their prorated share of the outstanding assessment at closing.[11]

Shortly after purchasing the property, Bentley-Prestwich received a welcome letter from the Association. The letter confirmed that the Bentley-Prestwich property was not governed by the Association, stating the property is "one of only a tiny handful of lots on Buck Mountain that are not encumbered with our CC&R's and are not officially members in the Buck Mountain Owners' Association." The Association declared, "While you are not members, you have access to your property over roads maintained by us, and therefore are subject to a road assessment."

In April 2006, the Association mailed Bentley-Prestwich a $437.50 road maintenance assessment. Bentley-Prestwich refused to pay in full, offering instead to pay seven percent of the assessment. After a series of negotiations, the Association mailed Bentley-Prestwich another letter requesting that they pay 62.5 percent of the road maintenance fee regularly charged to Association members. Bentley-Prestwich disregarded the letter.

Later that year, the Association sued Bentley-Prestwich. The Association sought a declaration under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, of the parties' respective road maintenance obligations under the 1981 easement. Bentley-Prestwich filed several counterclaims, including claims for abuse of process and malicious prosecution. Nearly a year after the Association brought suit, Bentley-Prestwich also filed a third-party complaint against the Starr Trust. They alleged that the Starr Trust breached its statutory covenant against encumbrances and its statutory

___

[11] At trial, Barbara Bentley testified she did not notice this minor prorated assessment amount. The court found this testimony not credible.

covenant to defend, by conveying title subject to an undisclosed obligation to pay the Association's road maintenance assessments.

In August 2011, following a six-day bench trial, the trial court denied Bentley-Prestwich's counterclaims[12] and entered judgment in favor of the Association for $11,132.44 in past-due assessments, construction impact fees, late fees, and interest. It also ordered Bentley-Prestwich to execute a road maintenance agreement obligating them to contribute 62.5 percent of the road maintenance costs regularly assessed by the Association on its members, or 100 percent if Bentley-Prestwich use the property for commercial purposes (i.e., as rental property). The agreement treated unpaid assessments as a "lien upon the land" and permitted the Association to "foreclose [the lien] in the same manner as a mortgage." The agreement also provided, "This Agreement shall run with the land . . . and shall be binding upon all parties having or acquiring any right, title, or interest" in the property.

The trial court entered a separate order dismissing Prestwich's third party claim against the Starr Trust. It concluded that Bentley-Prestwich's obligation to share road maintenance costs did not constitute an "encumbrance" within the meaning of RCW 64.04.030, which requires the grantor of a statutory warranty deed to promise that the title being conveyed is free of encumbrances. Accordingly, it ruled that the Starr Trust did not breach its warranty against encumbrances. The court also ruled that, in any event, Bentley-Prestwich "never tendered the defense of [the Association's] complaint for declaratory judgment to the Starr Trust." The trial court denied Bentley-Prestwich's reconsideration motions.

---

[12] Bentley-Prestwich do not appeal the denial of their counterclaims.

-7-

## ANALYSIS

### Standard of Review

Ordinary rules of appellate procedure apply to an appeal from a declaratory judgment. RCW 7.24.070; Simpson Tacoma Kraft Co. v. Dep't of Ecology, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). "When findings of fact and conclusions of law are entered following a bench trial, appellate review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law and judgment." Sunnyside Valley Irrigation Dist. v. Dickie, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). This court defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. Boeing Co. v. Heidy, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). In determining the sufficiency of the evidence, this court need only consider evidence favorable to the prevailing party. Bland v. Mentor, 63 Wn.2d 150, 155, 385 P.2d 727 (1963). There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990). Unchallenged findings of facts are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). "The appellant must present argument to the court why specific findings of fact are not supported by the evidence and must cite to the record to support that argument," or they become verities on appeal. Inland Foundry Co. v. Dep't

of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001). Such unsupported arguments need not be considered. Bryant v. Palmer Coking Coal Co., 86 Wn. App. 204, 216, 936 P.2d 1163 (1997). We review questions of law de novo. MH2 Co. v. Hwang, 104 Wn. App. 680, 683, 16 P.3d 1272 (2001). Whether an obligation exists to contribute to costs reasonably incurred for repair and maintenance of a road easement used in common is a question of law we review de novo.

Road Maintenance Assessment Obligation

This declaratory judgment action involves a dispute over an obligation to pay a share of maintenance costs for the use of a shared road easement. The parties agree on one critical fact. No form of agreement binds Bentley-Prestwich to share these costs.

Bentley-Prestwich challenges the trial court's judgment requiring them to pay past-due and future road maintenance assessments, to include interest, late fees, penalties, and construction impact fees, and to execute and record a road maintenance agreement affecting the owner of the Bentley-Prestwich property in perpetuity.

The parties agree that the 1981 road easement allocates no responsibility for road maintenance. They disagree as to the effect of that omission. Bentley-Prestwich argue that the Association lacked authority to seek contribution for road maintenance costs absent an express agreement that either satisfied the statute of frauds or met the requirements for an equitable covenant.[13] The Association readily acknowledges that

---

[13] Bentley-Prestwich argue, "An obligation 'to contribute one's share of the neighborhood's maintenance expenses generally is characterized as an affirmative covenant.'" Appellants' Opening Br. at 28 (quoting Lake Arrowhead Cmty. Club, Inc. v. Looney, 112 Wn.2d 288, 293, 770 P.2d 1046 (1989). They misread Lake Arrowhead. The full quotation from that case reads, "A covenant to contribute one's share of the

no agreement in any form binds the parties. It relies instead on the court's inherent equity powers to argue, "[A]ll users of a shared access easement are obligated to pay a reasonable share of the costs to maintain the roadway."[14] Association's Response Br. at 21.

Relying on Bushy v. Weldon, 30 Wn.2d 266, 191 P.2d 302 (1948), and on non-Washington case authority, the Association argues that courts may impose an equitable road maintenance obligation on joint users of an access easement. In Bushy, the owner of adjacent lots built a concrete driveway on the boundary line between the lots. Several years later, the subsequent owner of one lot sued the subsequent owner of the other lot for an order quieting title to the shared driveway. The trial court denied the requested relief and the Supreme Court affirmed, holding that each neighbor had acquired an easement by implication. The Supreme Court then affirmed a portion of the trial court's order requiring each neighbor to pay one-half of the driveway maintenance expenses going forward. It reasoned that the trial court's order apportioning costs "was made in the interests of both parties[,] . . . applied a proper rule of simple justice, and precludes litigation in the future." Bushy, 30 Wn.2d at 272.

---

neighborhood's maintenance expenses generally is characterized as an affirmative covenant." Lake Arrowhead, 112 Wn.2d at 293 (emphasis added). In other words, where a cost-sharing covenant already exists, it is generally characterized as an affirmative covenant. Lake Arrowhead does not hold that any obligation to share road maintenance costs should be characterized as an affirmative covenant (which, in turn, must satisfy the statute of frauds).

[14] Trial courts, sitting in equity, may fashion remedies "to do substantial justice to the parties and put an end to the litigation." Esmieu v. Hsieh, 92 Wn.2d 530, 535, 598 P.2d 1369 (1979). The trial court's equity power "is inherently flexible and fact-specific." Proctor v. Huntington, 169 Wn.2d 491, 503, 238 P.3d 1117 (2010). Here, no party disputes the existence of the trial court's equity power. Bentley-Prestwich and the Association only disagree whether that power authorized the relief granted.

-10-

The Association argues that <u>Bushy</u> holds, "[C]oncurrent users of a shared easement (with no road maintenance provisions) must share road maintenance . . . ." Association's Response Br. at 25. Bentley-Prestwich argue that <u>Bushy</u> is distinguishable because the case involved the court's equitable apportionment of maintenance costs affecting an <u>implied</u> easement. Since the issue here involves an express easement that failed to allocate responsibility for road maintenance, Bentley-Prestwich claim <u>Bushy</u> does not control.

We are unpersuaded by this distinction because <u>Bushy</u> nowhere limits its holding to implied easements. It affirmed the trial court's exercise of its inherent equity power to resolve a cost-sharing dispute between users of a shared driveway, premised on basic rules of fairness. Bentley-Prestwich offer no rationale or case authority to justify their artificial distinction between implied and express easements in this context.

<u>Bushy</u> controls. We are bound by the decisions of our state Supreme Court and err when we fail to follow it. <u>1000 Virginia Ltd. P'ship v. Vertecs Corp.</u>, 158 Wn.2d 566, 578, 146 P.3d 423 (2006).

In addition, numerous non-Washington cases are consistent with <u>Bushy</u>'s application of equity in requiring common road easement users to share road maintenance expenses. As the Association observes, those cases support the court's exercise of its equity power to impose reasonable road maintenance obligations where no agreement exists.[15] For example, in <u>Beneduci v. Valadares</u>, 812 A.2d 41 (Conn.

---

[15] Numerous jurisdictions have adopted a similar rule. <u>See</u> <u>Drolsum v. Luzuriaga</u>, 93 Md. App. 1, 611 A.2d 116, 125 (Spec. App. 1992) ("'Where a private road is used in common by the owner of land across which such road runs and by a person who has an easement of way over it, the burden of reasonable repairs must be distributed between them in proportion as nearly as possible to the relative use of the

App. Ct. 2002), the court affirmed an order requiring users of a shared driveway to split

routine maintenance costs. Relying on the Restatement (Third) of Property (2000), the

court reasoned that it was "appropriate that both parties contribute to the maintenance

of the driveway because both parties contribute to the wear on the driveway."

Beneduci, 812 A.2d at 51. Even though no written agreement bound the parties, the

court held:

> We conclude that the proper rule is, absent language in a deed to the contrary, "[j]oint use by the servient owner and the servitude beneficiary . . . of the servient estate for the purpose authorized by the easement . . . gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate . . . used in common." 1 Restatement (Third), Property, Servitudes § 4.13(3), pp. 631-32 (2000).

Beneduci, 812 A.2d at 51.

In McDonald v. Bemboom, 694 S.W.2d 782 (Mo. Ct. App. 1985), the Missouri

Court of Appeals adopted a similar rule:

---

road.'") (quoting 25 Am.Jur.2d Easements and Licenses § 85 (1966 & Supp.1991)); Hayes v. Tompkins, 287 S.C. 289, 337 S.E.2d 888, 891-92 (1985) (affirming equitable order requiring dominant and servient landowners to share maintenance costs for road, where both landowners used the road to access their respective homes); Larabee v. Booth, 463 N.E.2d 487, 492 (Ind. Ct. App. 1984) (same); Marsh v. Pullen, 50 Or. App. 405, 623 P.2d 1078, 1080 (1981) (holding that "where both the servient owner and the easement owner use the easement and restoration or maintenance is required, contribution by the servient owner for the costs of repairs and maintenance is allowed" and remanding for entry of a decree apportioning costs); Lindhorst v. Wright, 616 P.2d 450, 454-55 (Okla. Civ. App. 1980) ("[W]here the easement owner is not the sole user of a private right-of-way, but uses it in common with the servient tenants, then the costs of repair and maintenance should be distributed among all users in proportions that closely approximate the usage of the parties."); Janes v. Politis, 79 Misc. 2d 941, 361 N.Y.S.2d 613, 615 (Sup. Ct. 1974) ("With respect to easements in common, . . . the general rule is that the burden of maintaining an easement owned in common and used by the co-owners is imposed upon all of them."); see also Freeman v. Sorchych, 226 Ariz. 242, 245 P.3d 927, 934 (2011) (identifying a "general principle that a party having rights to use an easement should share in the maintenance and repair expense for that easement."). Bentley-Prestwich fail to distinguish any of these cases and cite no contrary authority.

> A respectable body of authority in other jurisdictions holds that apportionment of the cost of repairs and maintenance of a private roadway between the owners of the dominant and servient tenements is fair and just, even though the agreement creating the easement is silent with respect thereto, where the owners of both the dominant and servient tenements regularly use the private roadway.

McDonald, 694 S.W.2d at 786. The court affirmed an order requiring one of the parties to pay its "proportionate share of repair and maintenance costs . . . ." McDonald, 694 S.W.2d at 783.

Bushy is also consistent with the Restatement (Third) of Property: Servitudes § 4.13(3) (1998).[16] Under the Restatement approach, in the absence of an agreement, joint use of an easement creates an obligation to share costs:

> Joint use by the servient owner and the servitude beneficiary of improvements used in enjoyment of an easement or profit, or of the servient estate for the purpose authorized by the easement or profit, gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate or improvements used in common.

Bentley-Prestwich also contend that the trial court improperly relied on "intent" and "pattern of conduct" evidence.[17] They claim:

---

[16] The Association acknowledges that no published Washington decision has expressly adopted the Restatement section quoted above. But it correctly argues that the Restatement supports the court's equitable approach in Bushy. Bentley-Prestwich rely on Crisp v. VanLaecken, 130 Wn. App. 320, 321, 122 P.3d 926 (2005), to argue, "Washington does not always follow the Restatement of the Law." Reply Br. of Appellants at 10 n.4. But that case involves Restatement §4.8(3) (not the section at issue here) and relocation of an easement. Crisp declined to adopt the Restatement approach because it represented a minority view and was contrary to Washington law. Here, there is no serious dispute that Restatement §4.13(3) represents the majority view and conforms with Washington law. In addition, "placing an argument of this nature in a footnote is, 'at best, ambiguous or equivocal as to whether the issue is truly intended to be part of the appeal.'" St. Joseph Gen. Hosp. v. Dep't of Revenue, 158 Wn. App. 450, 472, 242 P.3d 897 (2010) (quoting State v. Johnson, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993)).

[17] On the effect of the parties' intent, the Restatement provides:

The trial court here erred in relying on the unexpressed subjective intent of one of the nine original contracting parties to find "the parties' predecessors-in-interest intended for all road users to pay a share of road maintenance fees" determined unilaterally by the Association. . . . The trial court erred in relying on subjective intent for purposes of "show[ing] an intention independent of the instrument."

Moreover, the trial court erred in concluding that a "pattern of conduct" by Bentley-Prestwich's predecessors-in-interest in paying assessments to the Association established an intent, contrary to the written deeds, that non-member lots were subject to assessments.

Appellants' Opening Br. at 34. They also challenge finding of fact 26, which states,

"The course of conduct of the Starrs, as predecessors-in-interest to the defendants [Bentley-Prestwich], is significant as to the parties' intent and supports the contention that all users were to share equally in the maintenance of the roadway." These contentions are waived because Bentley-Prestwich's trial counsel never objected to the admission of this evidence at trial. Nor could he, since counsel's trial brief twice informed the court that the parties' intent <u>was</u> relevant:

Bentley-Prestwich specifically informed Plaintiff that the facts are, and that Bentley-Prestwich's position is:

. . . .

As the evidence will show, Bentley-Prestwich's predecessors in title <u>intended and or agreed</u> that Bentley-Prestwich's real property has no obligation to pay costs and expenses for maintenance, improvement and insurance of those roads over which Bentley-Prestwich's property has rights and easements for ingress, egress and utilities specifically reserved by the June 29, 1977 deed described in Exhibit "B" to plaintiff's Complaint.

---

"When the owner of the servient estate and the beneficiary of an easement or profit both make the use of the servient estate that is authorized by the easement or profit, they are both liable to contribute to the costs reasonably incurred for repair and maintenance of the portion of the servient estate and the improvements they use in common. This rule, which like all the rules stated in this Chapter yields to a contrary intent of the parties, is based on a rather weak assumption as to what the parties probably intended, or would have intended had they thought about the question. Because the circumstances of the creation and use of easements and profits can vary so widely, this rule may not fit well in a particular case. It should yield readily to inferences as to the actual or probable intent of the parties drawn from the circumstances of the particular case." RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.13(3), cmt. d (1998).

(Emphasis added.) We also conclude sufficient evidence supports the trial court's findings and that those findings support its conclusions of law. Bentley-Prestwich's challenges to the above-noted findings are, in substance, a challenge to witness credibility and the persuasiveness of the evidence. The trial court's credibility determinations and resolution of the truth from competing evidence will not be disturbed on appeal. Garofalo v. Commellini, 169 Wash. 704, 705, 13 P.2d 497 (1932); Du Pont v. Dep't of Labor & Indus., 46 Wn. App. 471, 479, 730 P.2d 1345 (1986).

Bentley-Prestwich argue for the first time on appeal that no binding covenant requires them to contribute to the Association's maintenance expenses, since "[a]n obligation 'to contribute one's share of the neighborhood's maintenance expenses generally is characterized as an affirmative covenant,'" and "for a covenant to be enforceable it must 'satisfy the statute of frauds.'"[18] Appellants' Opening Br. at 28-29 (quoting Lake Arrowhead Cmty. Club, Inc. v. Looney, 112 Wn.2d 288, 293, 770 P.2d 1046 (1989) and Dickson v. Kates, 132 Wn. App. 724, 731, 133 P.3d 498 (2006)). Because these claims were not raised below, we decline to review them. RAP 2.5(a); Boeing Co. v. State, 89 Wn.2d 443, 451, 572 P.2d 8 (1978); Postema v. Postema Enters., Inc., 118 Wn. App. 185, 193, 72 P.3d 1122 (2003) ("The purpose of this general rule is to give the trial court an opportunity to correct errors and avoid unnecessary retrials."). In addition, the trial court imposed no affirmative covenant here. The court relied on well-settled case authority holding that, absent agreement, joint use of an easement creates an obligation to share costs.

---

[18] The parties also refer to this covenant as an "equitable restriction," "equitable covenant," or "constructive covenant."

Standing

Bentley-Prestwich challenge finding of fact 1, which states that they and the Association are "two users of a common access easement." They argue that the Association cannot be a "user"[19] of the easement because it technically has "no right, title or interest in the [1981] easement . . . ." Appellants' Opening Br. at 26. They contend that the Association's rights "are limited to the easements that it maintains for its members, within the geographic bounds of the Buck Mountain Development." Appellants' Opening Br. at 27. Whether these contentions raise a standing and/or sufficiency of the evidence issue is unclear. If Bentley-Prestwich meant to raise the Association's standing to bring this lawsuit, the contention fails.

The trial court's letter ruling[20] indicates it resolved this contention on standing grounds. The ruling states, in part, "Prestwich-Bentley alleges that BMOA [Buck Mountain Owners' Association] has no standing to bring the complaint, arguing that BMOA exists and has powers and obligations only as to the real property included within its governing documents." (Emphasis added.) Bentley-Prestwich make a similar argument on appeal but never address the issue. They also assigned no error to conclusion of law 6, which states, "Plaintiff has standing to bring its first amended complaint under the Uniform Declaratory Judgments Act." We decline to address the standing issue.

---

[19] In context, the court's reference to the Association as "user" of the easement means the Association members.

[20] Bentley-Prestwich argue that the "trial court erred in entering its letter ruling . . . ." Appellants' Opening Br. at 3. Because their briefs devote no argument to this challenge, the issue is waived. Valley View Indus. Park v. City of Redmond, 107 Wn.2d 621, 630, 733 P.2d 182 (1987).

To the extent Bentley-Prestwich meant to challenge finding of fact 1 on insufficiency of the evidence grounds, that claim fails. Ample record evidence supports this conclusion. See Findings of Fact 7, 22, and 25.[21]

The trial court properly exercised its equity power when it required Bentley-Prestwich, joint users of the road easement, to share reasonable maintenance costs associated with the road's use.

Handwritten Road Repair Provision in 1977 Deed of Trust

At trial, Bentley-Prestwich argued that a handwritten interlineation in the 1977 deed of trust requiring the original developers to "construct a serviceable rock roadbed," combined with a boilerplate provision requiring them to maintain all improvements in "good condition and repair," required the developers and their successors-in-interest (i.e., the Association) to pay all road maintenance costs in perpetuity. The trial court rejected this argument. It found, "The parties' predecessors-in-interest intended for all road users to pay a share of road maintenance fees, and defendants must do so as well." This finding was supported by the testimony of William Carlson, one of the grantors of the 1977 deed of trust, who disputed the claim that the developers agreed to assume all maintenance responsibilities:

> [The] conclusion [that both parties' predecessors-in-interest agreed to share road maintenance costs] is . . . supported by extrinsic evidence . . . . Mr. Carlson testified that 'there was no free ride for anybody," and that "everybody would share equal," and that "they would all share in the Buck Mountain Road Maintenance Association," and that ["]it was always the intent that everybody would share equal in road maintenance."

---

[21] To the extent Bentley-Prestwich challenge these findings, the challenges are either abandoned for failure to present argument under Inland Foundry or are supported by sufficient record evidence.

The court also found that, had the developers intended to provide road maintenance in perpetuity, "they would have added certain words [to the 1977 deed of trust], such as 'That Grantors construct <u>and maintain</u> a serviceable rock roadbed.'"

Bentley-Prestwich challenge each of these findings. They initially challenge the court's reliance on extrinsic evidence, but now claim insufficiency of the evidence. They argue the trial court "erred in relying on this one developer's [William Carlson] deposition testimony as a basis for interpreting the easement to include a covenant obligating the owners to pay assessments to the Association." Appellants' Reply Br. at 7-8. Bentley-Prestwich failed to object at trial to the admission of this deposition testimony. This claim is waived. Even so, the record shows the trial court properly relied on this testimony to reject the unsupported claim that the developers agreed to assume all maintenance responsibilities. Substantial evidence supports the trial court's findings of fact 17, 18, and 34.

<u>Apportionment of Assessment</u>

Bentley-Prestwich challenge the trial court's judgment obligating them to pay 62.5 percent instead of 7 percent of the road maintenance assessment. The trial court found the assessment was reasonable based on its finding that other nonmember owners in the L-shaped parcel had agreed to pay 62.5 percent of the assessment regularly charged to members. The following disputed findings of fact are relevant:[22]

---

[22] Our review is hampered by Bentley-Prestwich's utter failure to identify which of its arguments relates to its specific challenged findings of fact. Even assuming all challenged findings relate to this issue, Bentley-Prestwich do not address whether these findings are unsupported by sufficient evidence. Their arguments instead challenge matters within the trial court's discretion—witness credibility and evaluating persuasiveness of the evidence.

28. With limited exceptions, plaintiff association assesses each of its 130 member parcels the same amounts for road maintenance. The plaintiff does so because of the difficulties in accurately prorating such costs, and because its governing documents mandate that course.

. . . .

30. One such exception is the plaintiff's agreements with some owners within the L-shaped parcel retained by the defendants' predecessors-in-interest to pay 62.5% of the full assessment amounts, plus 100% of the plaintiff's fee for construction impacts.

31. It would be well within the evidence presented and the court's discretion to require the defendants' parcel to pay 100% of the share paid by all members of the plaintiff association. However, the court finds that the exceptions (as set forth in the preceding paragraph) carved out for other owners in the L-shaped area are also reasonable, and will order that the defendants pay according to such exceptions.

Bentley-Prestwich challenge the portion of finding of fact 28 relating to the Association's "difficulties in accurately prorating" road maintenance costs among individual users.

They also challenge the implied statement in finding of fact 31 that a 62.5 percent assessment was reasonable given the Association's identical agreements with other owners within the L-shaped parcel.[23]

Bentley-Prestwich argue:

The trial court erred in ordering Bentley-Prestwich to pay 62.5% of the full assessment paid by members for the Association's road maintenance when there was no evidence that this was a fair or reasonable amount for Bentley-Prestwich to pay as non-members of the Association. Under their deed, Bentley-Prestwich are only entitled to use the road from Stone Gate to their property—0.7 miles of the ten-mile road system maintained by the Association. To the extent the judgment against them was based on principles of equity, Bentley-Prestwich's contribution to road maintenance should be limited to that portion of the road system that they actually use, and not the entire 10-mile road system maintained by the Association.

---

[23] Bentley-Prestwich also challenge finding of fact 32, which states, "The agreement attached as Exhibit A hereto [i.e., the road maintenance agreement] is based upon the agreements with other owners within the L-shaped area, and reasonably constructed to achieve this purpose with respect to [Bentley-Prestwich's] parcel." The nature of their challenge is unclear. But in any case, the assignment of error is waived because they fail to argue it in their opening brief. See Valley View, 107 Wn.2d at 630.

Appellants' Opening Br. at 37-38 (citation omitted).[24]

Bentley-Prestwich rely exclusively on Bushy in their opening brief to argue that the trial court must limit an equitable road maintenance obligation to the portion of the road system used by each party. As discussed above, in Bushy, the court required joint users of a driveway to split maintenance costs equally. It did not require the trial court to determine what portion of the driveway each homeowner actually used. Instead, it held that "simple justice" required each homeowner to pay the same amount. Bushy, 30 Wn.2d at 272. Bushy provides no support for Bentley-Prestwich's argument that the trial court, as a matter of law, must calculate each party's actual use before allocating their respective obligations.

Relying on the Restatement, Bentley-Prestwich argue that joint users of an easement must share maintenance costs only for the "portion of the servient estate or improvements used in common." Appellants' Reply Br. at 13-14 (formatting omitted and emphasis added) (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.13(3); see also § 4.13, cmt. d. ("frequency and intensity of use . . . should be taken into account" when apportioning costs). The Restatement approach does not control the court's methodology for determining the allocation of maintenance assessments in this case. While the court may consider "frequency and intensity of use," we decline to adopt a fixed rule delimiting the court's inherent equity power to allocate maintenance costs based on the particular facts and equity of a case. Nothing in the Restatement prevented the trial court from considering other factors to determine a fair allocation,

---

[24] Bentley-Prestwich claim they are denied use of the 10 miles of roadway maintained by the Association. The trial court rejected this assertion.

including the difficulty in prorating costs and the 62.5 percent paid by Bentley-Prestwich's nonmember neighbors (West-Dalnoky, Demeron, and Bramblet) who also own property in the L-shaped parcel.[25] Bentley-Prestwich cite no controlling case authority to support their contention.[26]

We conclude that sufficient evidence supports findings of fact 28 and 31 and that the findings support the conclusion of law that Bentley-Prestwich are obligated to share 62.5 percent of the total maintenance assessment. At trial, the Association's traffic expert testified that the distance traveled by Bentley-Prestwich was "not significantly below" the distance traveled by the average user. He also testified that calculating each user's obligation based solely on distance traveled "would not be fair," since such a calculation erroneously assumes that the road system has uniform maintenance requirements and that each user causes a similar impact. In response, Bentley testified

---

[25] These parcel owners signed road maintenance agreements with the Association. The road maintenance agreement at issue here is nearly identical to that signed by these owners.

[26] Bentley-Prestwich's statement of additional authorities (RAP 10.8) cites the recent case of Northwest Properties Brokers Network v. Early Dawn Estates Homeowners Ass'n, No. 42426-6-II (Wash. Ct. App. Feb. 20, 2013). There, a property owner shared a nonexclusive road and utility easement with members of a homeowners' association. The owner, whose property was not subject to the association's CCRs, sought a declaration that he was not required to pay the association's annual road maintenance fee. The trial court ruled that the nonmember owner was required to pay a pro rata share of the association's maintenance but was not required to pay an annual assessment. Division Two of this court affirmed the judgment, concluding that the trial court "did not abuse its discretion in formulating a remedy for the dispute over how [the owner] was to pay his share of maintenance costs for [the easement]." Nw. Props., slip op. at 19. Here, no party argued that we should apply an abuse of discretion standard. Our disposition, based on a de novo review of the record, would be the same under the more deferential abuse of discretion standard. In any event, the court's holding supports our conclusion that the trial court's inherent equity power includes the authority to apportion reasonable road maintenance costs based on the circumstances of each case.

that accurate proration based on distance traveled was possible. She also claimed, "[W]hen they're discussing and getting bids for road maintenance and road maintenance costs, it's almost always broken down by section." Verbatim Report of Proceedings (VRP) (Apr. 6, 2011) at 966.

As it was entitled to do, the trial court credited the expert's testimony over Bentley's testimony.[27] Where the trial court has weighed the evidence, "[w]e will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." Greene v. Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

### Binding Covenant (Road Maintenance Agreement)

As discussed above, the trial court properly declared the rights and obligations between the Association and Bentley-Prestwich when it determined that Bentley-Prestwich were obligated to pay a 62.5 percent share of all past and future maintenance assessments. But we are troubled by the court's requirement that Bentley-Prestwich sign and record a binding covenant[28] entitled "Road Maintenance Agreement Between Buck Mountain Owners Association and Prestwich-Bentley."

This agreement contained provisions, among others, that require subsequent owners "to contribute a share of the sums for road maintenance regularly assessed by the plaintiff association on its members." The agreement also creates a "lien upon the land" for unpaid assessments, subject to foreclosure in the same manner as a mortgage. Bentley-Prestwich argue, "[T]he trial court's judgment went well beyond determining the parties' respective financial obligations related to road maintenance . . .

---

[27] The trial court found other aspects of Bentley's testimony not credible.

[28] The parties refer to this agreement as a binding covenant.

[by] formally encumber[ing] the Bentley-Prestwich property with a 'binding covenant' requiring the property's present and future owners to pay assessments . . . ." Appellants' Opening Br. at 27.

As the proponent of this agreement, the Association never responds to Bentley-Prestwich's argument questioning the court's authority to impose a binding covenant. In addition, the Association cites no authority to support this form of relief. Finally, the findings and conclusions related to this issue are inadequate to allow a meaningful review. We conclude the trial court erred by requiring Bentley-Prestwich to execute the road maintenance agreement.[29] Accordingly, on remand to the trial court, the agreement shall be stricken.

Taxation Without Representation

Bentley-Prestwich argue that the trial court's imposition of a road maintenance obligation subjects them to "taxation without representation" because it provides the Association unilateral authority to set the amount of their annual road maintenance obligation. Appellants' Opening Br. at 36. They cite no authority holding that an equitable cost-sharing obligation is invalid unless accompanied by the right to vote on those costs. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). They rely on Malim v. Benthien, 114 Wn. 533, 196 P. 7 (1921),

---

[29] As noted above, this agreement is nearly identical to the agreements signed by Bentley-Prestwich's three neighbors. With the exception of one nonmember property owner, Bentley-Prestwich are the only owners unwilling to pay a share of the maintenance assessments. All Association members pay 100 percent while nonmembers pay 62.5 percent.

which involved a publicly-elected body's exercise of the state's taxing power. <u>Malim</u> is inapposite. The road maintenance obligation here involves private parties. This claim fails.

THIRD PARTY CLAIM

Bentley-Prestwich argue that the trial court erred in dismissing their third party complaint, which alleged that the Starr Trust breached its statutory covenant against encumbrances and its duty to defend.[30] The Starr Trust responds that Bentley-Prestwich inadequately tendered defense of the Association's lawsuit. We agree.[31]

The covenant to defend is a "future covenant that no lawful, outstanding claims against the property exist." <u>Mastro v. Kumakichi Corp.</u>, 90 Wn. App. 157, 164, 951 P.2d 817 (1998). "Generally, a covenantee may not recover damages against a covenantor for breach if no notice is given, as the latter is deprived of a fair opportunity to defend title." <u>Mellor v. Chamberlin</u>, 100 Wn.2d 643, 648, 673 P.2d 610 (1983). The parties agree that an adequate tender of defense requires the grantee to notify the grantor (1) of the pendency of the suit; (2) that if liability is found, the grantee will look to the grantor for indemnification; (3) that the notice "constitutes a formal tender of the right to

---

[30] Bentley-Prestwich also suggest that the Starr Trust breached its covenant of quiet enjoyment. They challenge the trial court's finding that "Prestwich-Bentley have not been evicted from their land, nor have they been prevented in any way from using the road easement to access their property." They also challenge the trial court's conclusion that "Prestwich-Bentley have had the quiet and peaceful possession of the premises." These challenges are waived due to lack of briefing. <u>Valley View</u>, 107 Wn.2d at 630.

[31] Given our disposition, we need not address the Starr Trust's alternative arguments that it conveyed unencumbered title and therefore had no duty to defend or that any breach of warranty did not proximately cause Bentley-Prestwich's alleged damages.

-24-

defend the action;" and (4) that if the grantor refuses to defend, "it will be bound in a subsequent litigation between them to the factual determination necessary to the original judgment."[32] Mastro, 90 Wn. App. at 165 (quoting Dixon v. Fiat-Roosevelt Motors, Inc., 8 Wn. App. 689, 692, 509 P.2d 86 (1973)).

Bentley-Prestwich challenge the trial court's finding that they "never tendered the defense of [the Association's] complaint for declaratory judgment to the Starr Trust." They also challenge the trial court's corresponding conclusion of law that "[n]o person has made a lawful claim against the title to Prestwich-Bentley's premises, nor have Prestwich-Bentley tendered to the Starr Trust any claim to defend." They argue that they adequately tendered the defense by filing and serving their third party complaint on the Starr Trust.

Tender by way of a third party complaint is timely and valid—provided the tender satisfies the Mastro criteria. See Broten v. May, 49 Wn. App. 564, 572 n.4, 744 P.2d 1085 (1987). Bentley-Prestwich's third party complaint did not constitute a "'formal tender of the right to defend the action,'" as required by the third Mastro criterion. See Mastro, 90 Wn. App. at 165 (quoting Dixon, 8 Wn. App. at 692). In Edmonson v. Popchoi, 172 Wn.2d 272, 256 P.3d 1223 (2011), our Supreme Court explained that tender of the right to defend "refers to the grantee's action of handing over the grantee's right to defend to the grantor through a tender of defense . . . ." Edmonson, 172 Wn.2d at 281-82. In other words, an adequate tender converts the grantee's right to defend

---

[32] In Mastro, we held that a tender of defense was adequate when the grantee-defendant's attorney sent the grantor a letter stating, among other things, "'This letter . . . provide[s] you formal written notice of certain claims set forth herein" and "'We hereby tender the defense of this claim by [the] Plaintiffs . . . .'" Mastro, 90 Wn. App. at 165 (alteration in original). We concluded that the letter "clearly and unambiguously" met the four criteria listed above. Mastro, 90 Wn. App. at 165.

into the grantor's _duty_ to defend. Edmonson, 172 Wn.2d at 281-82. It follows that an adequate tender will inform the grantor of its _duty_ to defend. Bentley-Prestwich's third-party complaint states that the Starr Trust was "join[ed] . . . to defend Bentley-Prestwich's title to the B-P Property . . . ." But in the next paragraph, the complaint states that Bentley-Prestwich "are by this third-party complaint requesting the court's determination and judgment that [the Starr Trust] _be ordered_ to indemnify Bentley-Prestwich . . . ." (Emphasis added.) And the complaint's prayer for relief asks the trial court to "determine and _enter judgment_ that Third-party Defendants are and shall be required to: . . . Defend Bentley-Prestwich's title to the B-P Property . . . ." We conclude the complaint failed to adequately inform the Starr Trust of its duty to defend.

In addition, the complaint fails to inform the Starr Trust that it will be bound by the decision in the lawsuit if it declines the tender. It thus fails to satisfy the fourth Mastro criterion. Because the complaint fails to satisfy at least two of the four Mastro criteria, the trial court properly dismissed Bentley-Prestwich's third party complaint against the Starr Trust.[33]

## ATTORNEY FEES ON APPEAL

Bentley-Prestwich and the Starr Trust request attorney fees on appeal under RAP 18.1(a), which permits the recovery of attorney fees on appeal if the requesting

---

[33] Bentley-Prestwich also challenge third party findings of fact 5 and 6, which state that Bentley-Prestwich were "on notice they could be subject to paying dues" and that they "knew or should have known there would be road maintenance fees." Given our disposition of this issue on grounds of inadequate tender, we need not address these challenges. Bentley-Prestwich also filed a motion to strike the Starr Trust's statement of additional authorities, which offered Dixon on the issue of "whether it would have been appropriate for the Starr Trust to accept the tender of defense from the Appellants." We deny the motion.

party demonstrates an entitlement under "applicable law."[34] We will award attorney fees to the prevailing party "only on the basis of a private agreement, a statute, or a recognized ground of equity." Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn. App. 497, 506, 761 P.2d 77 (1988). Bentley-Prestwich and the Starr Trust both cite the warranty deed statute, chapter 64.04 RCW, as "applicable law" for purposes of RAP 18.1(a). Their arguments are unpersuasive.

When the grantor of a statutory warranty deed breaches a covenant contained in RCW 64.04.030, the "injured grantee may recover damages for lost property or diminution in property value and, in the context of the warranty to defend, attorney fees proximately caused by the breach." Edmonson, 155 Wn. App. at 384. Because Bentley-Prestwich and the Starr Trust are not "injured grantees," we deny their requests for attorney fees under RCW 64.04.030.[35]

The Starr Trust also argues it is entitled to recover attorney fees under an attorney fee clause in the real estate purchase and sale agreement (REPSA) executed by Bentley-Prestwich. The clause states, "If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." Ex. 414. But as Bentley-Prestwich correctly argue, the REPSA is irrelevant. It is well established that REPSA provisions merge into a statutory warranty deed unless they are "collateral contract requirements that are not contained in or performed by the execution and delivery of the deed, are not inconsistent with the deed, and are independent of the obligation to convey." Barber v. Peringer, 75 Wn. App. 248,

---

[34] The Association did not request attorney fees on appeal.

[35] Whether a statute authorizes attorney fees is a question of law reviewed de novo. McGuire v. Bates, 169 Wn.2d 185, 189, 234 P.3d 205 (2010).

251-52, 877 P.2d 223 (1994); see also South Kitsap Family Worship Ctr. v. Weir, 135 Wn. App. 900, 905, 146 P.2d 935 (2006); Barnhart v. Gold Run, Inc., 68 Wn. App. 417, 424, 843 P.2d 545 (1993). We deny the Starr Trust's attorney fee request.

## CONCLUSION

For the reasons discussed above, we affirm the trial court in part but reverse and remand with instructions to strike the document entitled "Road Maintenance Agreement Between Buck Mountain Owners Association and Prestwich-Bentley."

WE CONCUR: