## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74746-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RAJAB HAKIZIMANA | ) | UNPUBLISHED OPINION |
| AKA RAJABU HAKIZIMANA, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 31, 2017 |
| | ) | |

MANN, J. — Rajabu Hakizimana was convicted of felony harassment. He appeals his conviction arguing that the First Amendment required the State to prove that he subjectively intended to cause the victim fear of bodily injury or death. Consistent with State v. Trey M., 186 Wn.2d 884, 383 P.3d 474 (2016), we affirm Hakizimana's conviction.

## FACTS

Bebe Renzaho, who is from the Democratic Republic of the Congo, came to the United States in December 2014, after spending eight years in a refugee camp in Malawi. Renzaho and her husband, Floribent Mubalama, live in Sea Tac with their three children.

In August 2015, Hakizimana, who is a refugee from Burundi, relocated to Washington and was placed with Renzaho and Mubalama by a relief organization. Renzaho and Mubalama had never met Hakizimana before he moved in with them. Hakizimana's hands had been severed at some point before relocating. Despite his disability, Hakizimana was able to care for himself. He could light cigarettes, bathe himself, shave, tie his shoes, and eat with utensils.

During the next month, Hakizimana made several statements that concerned Renzaho. Hakizimana told Renzaho that as a police officer in Burundi he had killed many people and could kill or rape anybody he chose. One night, while Renzaho was away from the home visiting a friend, she spoke with Hakizimana by telephone. Hakizimana told Renzaho that he had dreamt that he raped a woman that he lived with. Renzaho told Hakizimana to never do that in her home, and Hakizimana said he would not. When Renzaho's husband was away at night working, Renzaho would lock herself and her children in her bedroom.

Hakizimana was not happy about living with Renzaho and Mubalama and often demanded that Mubalama speed up the process of helping him to acquire his own housing. One evening while Mubalama was away, Renzaho again demanded his own housing. He told Renzaho that her husband needed to make more of an effort to assist him in finding housing. When Renzaho told him to be patient, Hakizimana became furious. Renzaho called Mubalama to get him to try to calm Hakizimana down. Hakizimana refused to speak with Mubalama; Mubalama told Renzaho to call 911 if the situation worsened.

Hakizimana did not calm down; instead he told Renzaho that if her husband was not going to make an effort to get him a house he was going to "kill someone right now and I'm going to burn this house down." Hakizimana then stood up, went to the kitchen, picked up a dirty knife in the sink, washed it, and turned to face Renzaho holding the knife. Renzaho thought she was going to die "because I remembered the things that he had told me, that he can kill, that he can rape, so I just knew that this is it." Renzaho immediately collected her children and fled the house. Renzaho called the police.

When the police arrived, Hakizimana walked out of the residence carrying a knife between his arms and chest. The officers chased him, and when Hakizimana was detained, he placed the knife down on the step he was standing on and was arrested.

Hakizimana was charged with felony harassment. A jury convicted Hakizimana as charged. Before sentencing, Hakizimana moved to arrest judgment, arguing the State failed to present sufficient evidence that Hakizimana subjectively knew that whatever conduct he took was communicating an intent to kill Renzaho. The trial court denied the motion.

## ANALYSIS

Hakizimana was convicted of felony harassment under RCW 9A.46.020(1)(a)(i) and (b). Felony harassment requires a threat to kill. Laws which criminalize pure speech must be "interpreted with the commands of the First Amendment clearly in mind." Watts v. United States, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). Thus, "true threats" must be distinguished from threats that constitute protected speech. Watts, 394 U.S. at 707.

In State v. Williams, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001), our Supreme Court defined a "true threat" as "a statement made 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" Williams, 144 Wn.2d at 207-08 (quoting State v. Knowles, 91 Wn. App. 367, 373, 957 P.2d 797 (1998)). Washington courts have consistently relied on the objective (reasonable person) test since its adoption in Williams. Trey M., 186 Wn.2d at 894.

Hakizimana argues that we should reject the objective test and instead "hold that a person may not be convicted of issuing a "true threat" unless the State proves the speaker subjectively intended to place the victim in fear of bodily harm or death." Hakizimana contends the U.S. Supreme Court decisions in Virginia v. Black, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) and Elonis v. United States, 135 S. Ct. 2001, 2012, 192 L. Ed. 2d 1 (2015) call into question the constitutionality of the objective standard for assessing "true threats." Hakizimana maintains that according to Black and Elonis, in order to comply with the protections granted by the First Amendment, a person may not be convicted of issuing a "true threat" unless the State proves the speaker subjectively intended to place the victim in fear of bodily harm or death.

Since Hakizimana filed his appeal, our Supreme Court addressed the precise argument raised in this appeal. In Trey M, the Court held:

> We reject the invitation of appellant and amicus to abandon this court's settled precedent, which applies an objective (reasonable person) test in determining a true threat for First Amendment purposes. Appellant does

-4-

No. 74746-1-I/5

not convince us that either the Supreme Court's recent decision in Elonis or its previous decision in Black require such a change.

Trey, 186 Wn.2d at 908.

We are bound by the decisions of our state Supreme Court and err when we fail to follow it. Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 716, 308 P.3d 644 (2013); State v. Watkins, 136 Wn. App. 240, 246, 148 P.3d 1112 (2006). Accordingly, we hold the trial court did not err in this case because the jury instructions correctly identified the elements of the harassment statute and the legal definitions necessary for the jury to properly apply it.[1]

We affirm.

Mann, J.

WE CONCUR:

ACJ

Spearman, J.

---

[1] Hakizimana also briefly argues that the trial court erred in denying his motion to arrest judgment, maintaining the state failed to present sufficient evidence. At trial, the motion asserted the State failed to demonstrate Hakizimana's subjective intent. As such proof was not required, we find the trial court did not err in denying this motion.