[No. 19986-2-I.   Division One.   September 26, 1988.]

EQUITABLE LIFE LEASING CORPORATION, *Appellant,* v.
CEDARBROOK, INC., ET AL, *Respondents.*

related issues must be decided under the totality of the factual circumstances when they arise.

498

*Alexander W. Wirt* and *Matsen, Cory, Sprague, Layman & Wirt,* for appellant.

*Bruce Fine* and *Aiken & Fine, P.S.,* for respondents.

SCHOLFIELD, C.J.—The plaintiff, Equitable Life Leasing Corporation (Equitable), appeals the trial court's order granting defendant Cedarbrook's motion for summary judgment on its counterclaim and the subsequent trial court judgment awarding Cedarbrook damages for breach of contract. We affirm.

## FACTS

On October 28, 1982, Cedarbrook entered into an equipment lease agreement with Equitable, wherein Equitable agreed to lease to Cedarbrook certain equipment in consideration of Cedarbrook's making an initial payment of $1,047.82 and making further monthly payments of $523.91 commencing on November 10, 1982, and on the 10th of each month thereafter for 42 months.

On February 10, 1983, Equitable advised Cedarbrook that it was 3 months delinquent in its lease payments. Cedarbrook failed to bring its payments current. Due to chronic deficiencies in the Cedarbrook account, Equitable advised Cedarbrook by letter dated June 30, 1983, that the

lease payments were accelerated pursuant to the terms of the lease. Thereafter, Equitable continued monthly billings and continued to accept monthly payments and late charges.

In early November 1983, Equitable informed Cedarbrook by telephone that unless the October and November payments were received by November 28, 1983, the equipment would be repossessed. On about December 1, 1983, Equitable received and accepted two checks from Cedarbrook, one dated November 22, 1983, and one dated November 28, 1983. When those amounts were credited to Cedarbrook's account, the account was current except for $91 in late charges.

The lease provides as follows:

13. If lessee fails to observe, keep or perform any term or condition of this agreement or of any other contract between Lessor and Lessee, Lessor shall have the right to recover from Lessee reasonable damages caused by any such default, including Lessor's costs and expenses and, at the option of Lessor, to terminate this Agreement and upon notice thereof Lessee agrees to voluntarily surrender the equipment to Lessor; provided however, if Lessee fails to so surrender the equipment, or Lessee fails to pay rent or any moneys deemed to be rent, or Lessee disposes of or encumbers the equipment without the consent of Lessor, Lessor shall have the right, as the reasonable measure of its damages, (a) to declare the entire amount of rent hereunder immediately due and payable and, at the option of Lessor and without terminating this Agreement, (b) to take possession of the equipment, and sell or re–lease same applying the proceeds from sale or re–lease to pay past due and accelerated rental payments after deducting costs and expenses of repossession and sale or re–lease. . . .

Paragraph 11 of the lease lists certain fees and assessments which are to be considered as rent. Late charges are not included.

On December 7, 1983, Equitable repossessed the equipment. On that day, only the late charges of $91 remained

due. On March 19, 1984, Equitable filed a complaint seeking a deficiency judgment after repossession and sale of the equipment. In its complaint, Equitable alleged that Cedarbrook was in default because it had failed to make the November 10, 1983, payment and had failed to make all remaining payments since that date.

Cedarbrook filed an answer and counterclaim for damages, alleging that Equitable had breached the lease and wrongfully repossessed the equipment when only late charges of $91 remained due and outstanding. Cedarbrook moved for summary judgment on its counterclaim, and on May 15, 1986, the trial court entered an order of summary judgment in favor of Cedarbrook, holding that Equitable was liable for damages sustained by Cedarbrook due to Equitable's wrongful repossession of the leased equipment and breach of the parties' lease agreement.

On January 21, 1987, a trial was held on the issue of damages. Cedarbrook made a motion in limine for an order to restrict the testimony to the amount of damages due to Cedarbrook based on Equitable's wrongful repossession and breach of the lease. The trial court granted Cedarbrook's motion, based upon the prior order of summary judgment, which limited the issue to the amount of damages caused Cedarbrook by the repossession of the milling equipment. Cedarbrook further moved for an order prohibiting Equitable from introducing evidence regarding the payment record of Cedarbrook prior to the repossession. The trial court also granted this motion on the ground that such evidence was not relevant.

At trial, as part of the damages element, Cedarbrook sought to admit evidence of an agreement between Cedarbrook and Equitable that Cedarbrook had the option to buy the equipment. The trial court admitted the evidence based on an offer of proof by Cedarbrook in which it presented the testimony of Michael Martin, a broker for Equitable, that there was a contemporaneous oral agreement that gave Cedarbrook the option to buy the equipment at

the end of the lease term for 10 percent of its original purchase price.

The jury found for Cedarbrook in the amount of $95,000. On February 19, 1987, the trial court entered judgment of $95,000 in favor of Cedarbrook, as well as attorney's fees of $18,500 and costs of $413. This appeal timely followed.

## SUMMARY JUDGMENT[1]

On review of a summary judgment, the appellate court places itself in the position of the trial court and, considering the evidence in the light most favorable to the nonmoving party, must assess whether "the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986) (quoting CR 56(c)). Summary judgment is proper if the only issues are the legal effects of certain language of a contract. *Pine Corp. v. Richardson,* 12 Wn. App. 459, 530 P.2d 696 (1975). On appeal from a summary judgment, the reviewing court is limited to issues and materials considered by the trial court. *Alexander v. Gonser,* 42 Wn. App. 234, 237, 711 P.2d 347 (1985) (citing *Harris v. Kuhn,* 80 Wn.2d 630, 497 P.2d 164 (1972)), *review denied,* 105 Wn.2d 1017 (1986); RAP 9.12.

■ Equitable first argues that there is an issue of material fact as to whether it waived the acceleration and reinstated the lease prior to repossession of the equipment. However, in its answer to interrogatories, Equitable stated that only $91 in late fees was owed on the date of repossession. This admitted fact eliminates any need to consider whether the rental payments had been accelerated or the

---

[1]The Uniform Commercial Code, RCW Title 62A, was neither mentioned nor cited to this court by either party, and as far as the record reflects, was not mentioned or cited to the trial court. Therefore, we make no ruling involving the effect of the U.C.C. on the transaction before us. *See Merchants Leasing Co. v. Clark,* 14 Wn. App. 317, 323–24, 540 P.2d 922 (1975).

attempted acceleration waived. The undisputed facts, considered in the light most favorable to Equitable, support the conclusion that Equitable waived the acceleration by issuing monthly billings and accepting monthly payments and late charges after the notice of acceleration and by making a subsequent statement to Cedarbrook that it would not repossess the equipment if the October and November payments were made by November 28, 1983. A lessor cannot notify its lessee that the lease payments are accelerated and then issue monthly billings and accept monthly payments and late charges. These acts are inconsistent with acceleration.

■ Equitable also argues that Cedarbrook breached its duty of good faith and fair dealing. However, Equitable failed to present this issue to the trial court and cannot now raise the issue on appeal. Furthermore, Equitable presents no facts to support this argument. *See LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975). Mere failure to pay rent alone does not constitute an absence of good faith.

Similarly, Equitable cannot argue for the first time on appeal that there was an oral modification to the lease when it advised Cedarbrook by phone that the equipment *would be repossessed* unless the October and November payments were received by November 28. In its complaint, Equitable makes no mention of an oral modification and subsequent breach. Rather, it alleges that Cedarbrook failed to timely make a payment due on November 10. Equitable also failed to assert in its memorandum in opposition to summary judgment that there was an oral modification of the lease. Furthermore, Equitable presented no facts to show there was a modification of the original lease. The record indicates that the date was a unilaterally imposed deadline.

Equitable next argues that there is a genuine issue of material fact as to whether it breached the lease agreement by repossessing the equipment when Cedarbrook owed only $91 in late fees. Equitable claims that repossession was

proper because Cedarbrook breached the lease agreement first and also breached subsequent agreements to bring its account current, including the agreement to bring its account current by November 28, 1983. However, at the time of repossession, there was no breach by Cedarbrook because the only amount owed was $91 in late charges, and the lease describes default only in terms of nonpayment of rent. The lease does not include a late charge as rent.

Equitable also argues that the repossession actually commenced a few days earlier when it gave notice of repossession to Cedarbrook. However, this argument is not persuasive due to the fact that after giving notice of intent to repossess, Equitable accepted payments to the point that all of the rental payments in arrears were made current by the time the repossession actually took place. Accordingly, we find that the trial court was correct in concluding as a matter of law that Equitable breached the lease by repossessing the equipment when no rent was due.

## MOTION IN LIMINE

Equitable argues that the trial court erred in granting Cedarbrook's motion in limine to limit the issue to the amount of damages due Cedarbrook and to exclude evidence of Cedarbrook's payment history and prior breaches.

A motion in limine is addressed to the discretion of the trial court and will be reversed only in the event of abuse of discretion. *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 549 P.2d 483 (1976). The first part of Cedarbrook's motion in limine requested that the trial court limit the issue to the amount of damages due Cedarbrook based on Equitable's wrongful repossession and breach of the lease. In granting the motion, the trial judge recognized that because the liability issues were resolved in the court's earlier ruling on summary judgment, the only remaining issue concerned the amount of damages. The trial court properly exercised its discretion in limiting the evidence to the amount of damages.

The motion also requested that the trial court prohibit Equitable from introducing testimony regarding the payment record of Cedarbrook prior to the repossession. The trial judge excluded evidence of Cedarbrook's payment record on the ground that it was not relevant. Admission or exclusion of evidence on relevancy grounds is within the trial court's discretion, and reversal is appropriate only for manifest abuse. *Lee v. Sauvage,* 38 Wn. App. 699, 689 P.2d 404 (1984). Equitable argues that payment history is relevant to the issue of damages because if Cedarbrook was unable to make the lease payments, it probably was unable to operate the business, and therefore could not have sustained damages in the form of lost profits.

However, Cedarbrook's claim was for lost profits due to using outside mills, at a higher cost, from the time of the repossession in December 1983 until the end of the lease period 2½ years later. These damages were calculated based on the cost that Cedarbrook actually incurred in processing a finite amount of wood, and therefore the evidence of Cedarbrook's payment history was not relevant to its claim of lost profits. Accordingly, we find that the trial court did not abuse its discretion in excluding the evidence.

## PAROL EVIDENCE

Equitable next argues that the trial court erred in admitting evidence of the parties' contemporaneous oral agreement giving Cedarbrook the option to purchase the equipment upon expiration of the lease. Equitable claims that the evidence failed to establish a contemporaneous oral agreement which would allow the admission of parol evidence.

The parol evidence rule, as traditionally stated in Washington, provides:

> [P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake.

*Emrich v. Connell,* 105 Wn.2d 551, 555–56, 716 P.2d 863 (1986) (quoting *Buyken v. Ertner,* 33 Wn.2d 334, 341, 205 P.2d 628 (1949)). It is not a rule of evidence, but one of substantive law. Thus, prior or contemporaneous negotiations and agreements are said to merge into the final, written contract, and any of these, even if admitted without objection, is rendered incompetent and immaterial by operation of the rule. *Emrich v. Connell, supra* at 556.

However, the parol evidence rule only applies to a writing intended by the parties as an "integration" of their agreement, *i.e.,* a writing intended as a final expression of the terms of the agreement. In determining this preliminary factual question of whether the parties intended the written document to be an integration of their agreement, the trial court must hear all relevant, extrinsic evidence, oral or written. If, after hearing all the evidence the court determines that the writing is the final and complete expression of the parties' agreement—*i.e.,* completely integrated—then the extrinsic evidence is disregarded. If, however, the court finds that the parties intended the writing to be a final expression of the terms it contains but not a complete expression of all the terms agreed upon—*i.e.,* partially integrated—then the terms not included in the writing may be proved by extrinsic evidence only insofar as they are not inconsistent with the written terms. *Emrich v. Connell, supra* at 556. Parol evidence of a contemporaneous oral agreement is not necessarily excluded by an integration clause which provides that the writing constitutes the parties' entire agreement. *See Olsen Media v. Energy Sciences, Inc.,* 32 Wn. App. 579, 584, 648 P.2d 493, *review denied,* 98 Wn.2d 1004 (1982).

Applying these principles to the facts at bar, we find that the trial court properly admitted evidence of the parties' contemporaneous oral agreement. Although the lease contained an integration clause, the trial court found, after considering all relevant, extrinsic evidence, that the written lease was not completely integrated, the parties intending their agreement to be partly in writing and partly oral. This

finding of partial integration is supported by substantial evidence. Cedarbrook presented the testimony of Michael Martin, a broker who negotiated the lease between the parties, that Equitable had orally agreed that upon expiration of the lease Cedarbrook would have the option to purchase the equipment for 10 percent of its original purchase price.

■ Furthermore, the oral agreement is not inconsistent with any provision of the written lease. Paragraph 16 of the lease states that "[u]pon expiration of the lease term, Lessee will immediately return the equipment . . ." Equitable argues that this provision contradicts the oral agreement that upon expiration of the lease Equitable will sell the equipment to Cedarbrook. We find that a provision in the lease requiring the lessee to return the equipment at the termination of the lease is not inconsistent with an agreement which requires the lessor to then sell the equipment to the lessee.

■ Equitable also argues that Cedarbrook failed to establish by appropriate evidence any claim to damages. Equitable did not raise this issue before the trial court and did not raise it in this court until its reply brief. A contention presented for the first time in a reply brief will not receive consideration on appeal. *Fosbre v. State,* 70 Wn.2d 578, 424 P.2d 901 (1967); RAP 10.3(c).

### ATTORNEY'S FEES ON APPEAL

Attorney's fees will be awarded to a prevailing party only on the basis of a private agreement, a statute, or a recognized ground of equity. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 413, 645 P.2d 693 (1982). Contractual authority for awarding attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1. *West Coast Stationary Eng'rs Welfare Fund v. Kennewick,* 39 Wn. App. 466, 477, 694 P.2d 1101 (1985); *see also* RCW 4.84.330.

Both parties request attorney's fees under RCW 4.84.330, which reads in pertinent part:

In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

. . .

As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

The lease provides in paragraph 13 as follows:

Lessee agrees to pay reasonable attorney's fees and court costs incurred by Lessor in the enforcement of the terms of this Agreement.

RCW 4.84.330 provides for the bilateral application of the above unilateral contractual provision for the payment of attorney's fees. Therefore, because Cedarbrook is the prevailing party, it is entitled to attorney's fees.

Accordingly, we affirm the trial court and award Cedarbrook attorney's fees in the amount of $3,177.50.

SWANSON and WILLIAMS, JJ., concur.