# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DBM CONSULTING ENGINEERS, INC., a Washington corporation, | ) ) ) | No. 72053-8-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| JOSEPH D. SANDERS and the marital community composed of Joseph D. Sanders and Jane Doe Sanders; SOOS CREEK VISTA, INC., a Washington corporation, | ) ) ) ) ) ) ) | |
| Appellants, | ) ) | |
| CHRISTINE POLLOCK and the marital community composed of Christine Pollock and John Doe Pollock; POLLOCK INVESTMENT CO., LLC, a Washington limited liability company, | ) ) ) ) ) ) | |
| Defendants. | ) ) | FILED: November 2, 2015 |

APPELWICK, J. — Sanders and SCV challenge the trial court's order granting summary judgment. The trial court ordered Sanders to return promissory notes and cash fraudulently transferred by SCV in order to make them available in supplemental proceedings initiated by DBM. SCV argues that the trial court lacked the authority to grant relief under the Uniform Fraudulent Transfer Act[1] for two reasons: the transferred

---

[1] Chapter 19.40 RCW.

promissory notes and cash were fully secured pursuant to an antecedent debt and not subject to the UFTA, and because the insider transfer claim was time barred under UFTA's one year extinguishment statute. A transferee is a necessary party in an UFTA fraudulent transfer action. Sanders was not joined within the one year period. We reverse.

## FACTS

This is the third appeal involving DBM Consulting Engineers, Inc.'s attempt to collect a judgment from Soos Creek Vista, Inc. (SCV). See DBM Consulting Eng'rs, Inc. v. U.S. Fid. & Guar. Co., 142 Wn. App. 35, 37-38, 170 P.3d 592 (2007) (DBM I); DBM Consulting Eng'rs, Inc. v. Sanders, noted at 157 Wn. App. 1051, 2010 WL 3490240, at *1 (DBM II). In 2005, DBM attempted to garnish promissory notes[2] to satisfy its judgment against SCV. DBM II, 2010 WL 3490240, at *1. When DBM did so, it discovered that, in June 2005, the promissory notes were transferred from SCV to its owner and officer, Joseph Sanders. Id. In October 2005, DBM initiated supplemental proceedings to levy execution on the transferred promissory notes,[3] alleging the transfers were preferential payments to an insider in violation of the Uniform Fraudulent Transfer Act, chapter 19.40 RCW (UFTA). Id. The trial court determined SCV had made fraudulent transfers to Sanders, and ordered Sanders to return the promissory notes to SCV. Id. Sanders had not been made a party in his personal capacity. See id. at *3.

---

[2] SCV generated its income from the sale of property. The promissory notes at issue represent notes from three different sales of lots to three different buyers. Joseph Sanders, as president of SCV, assigned the promissory notes to himself, personally, on June 2, 2005.

[3] Although DBM also seeks return of cash Sanders transferred from SCV's bank account, that cash was not subject to the trial court's order discussed in DBM II.

Two questions were raised in DBM II: (1) whether a party must raise a UFTA claim in a new, separate action or if it may do so in a supplemental proceeding via a postjudgment motion and (2) whether a transferee of the allegedly transferred asset is a necessary party to the proceeding. Id. at *2. This court determined that a separate action was not required; an UFTA claim could be asserted in a supplemental proceeding. Id. We also determined that the transferee of assets was a necessary party to an UFTA claim. Id. Because Sanders, the transferee, had not been added as a party, the trial court's order was voided and the matter remanded for further proceedings. Id. at *3. The mandate in DBM II issued on March 8, 2011.

Upon remand, DBM's first motion sought an order to show cause directing Sanders to appear on March 5, 2012. DBM was unable to serve that order on Sanders. DBM obtained an amended order to show cause on June 20, 2012 for an August hearing date. The superior court made a clerical error and the August hearing date was lost. On March 3, 2014—almost three years after the Court of Appeals' mandate—DBM obtained a third order to show cause making Sanders a party. Sanders accepted service of the third order to show cause on March 6, 2014.[4] Then, Sanders moved for summary judgment arguing that DBM's UFTA claim against him was untimely and that the transfer of the promissory notes did not constitute a fraudulent transfer under the statute, because he had a

---

[4] DBM refers to the process of obtaining an order to show cause as a "rocky one." After the case was remanded, DBM cites to many different reasons for delay and for the gaps in time between the orders to show cause: DBM tendering the prosecution of the fraudulent conveyance claim to DBM's former attorneys and their insurance carrier, DBM reaching a settlement with the former attorneys, Sanders allegedly avoiding service of an order to show cause, the superior court losing track of the case and making a clerical error, and the death of DBM's president.

3

preexisting security interest in the promissory notes at issue. DBM also moved for summary judgment.

On June 2, 2014, the trial court granted DBM's motion for summary judgment. CP 906. It concluded that the transfers of SCV's promissory notes and cash to Sanders in June 2005 were fraudulent transfers forbidden by RCW 19.40.051. It further stated that Sanders was to convey the promissory notes to SCV and return cash that Sanders had transferred out of SCV's bank account. It also ordered that SCV and Sanders respond to DBM's interrogatories and appear for examination pursuant to RCW 6.32.010 and RCW 6.32.030. And, it awarded DBM attorney fees incurred pursuing SCV from March 4, 2011 through the entry of the supplemental judgment. Sanders and SCV (together "SCV") appeal.

## DISCUSSION

SCV argues that the trial court erred when it granted DBM's motion for summary judgment. First, it argues that the transfers of the promissory notes and cash were not subject to the UFTA, because they were property encumbered by a valid lien. Secondly, it argues that because DBM failed to make Sanders a party to the supplemental proceedings within the time required under RCW 19.40.091, that its UFTA action is time barred.[5] SCV also claims that if it prevails in this appeal, it is entitled to an award of attorney fees incurred in the supplemental proceedings below and on appeal.

---

[5] DBM argues that SCV should have brought its statute of limitations argument in the prior appeal. It argues this is so, because the statute began to run in 2005 when the transfers were made and, as a result, this argument was available during the first action. DBM cites to Bank of Am., N.A. v. Owens, 177 Wn. App. 181, 193, 311 P.3d 594 (2013), review denied, 179 Wn.2d 1027, 320 P.3d 718 (2014), for the assertion that allowing SCV to sit on this theory and wait until it did not prevail, flies in the face of the policy against allowing piecemeal appeals. But, the issue was not argued to the trial court and was not

I. Standard of Review

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002).

II. UFTA Statute of Limitations on Insider Transfers

RCW 19.40.051(b) governs transfers made to insiders. It states,

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Here, there is no question that a transfer from SCV, a corporation, to Sanders, its owner and officer, was a transfer to an insider as contemplated by the statute. Similarly, there is no question that the transfers rendered SCV insolvent. And, it is clear that Sanders made the transfers to compensate himself for an antecedent debt—an initial loan he made to SCV that was memorialized in a promissory note. Therefore, the only remaining issues are the two arguments SCV advances as to why summary judgment was improper.

UFTA provides a four year period in which to bring a claim based on a fraudulent transfer. RCW 19.40.091(a), (b). RCW 19.40.091(c) provides a more limited one year

---

ripe until after SCV prevailed in establishing Sanders was a necessary party. See DBM II, WL 3490240, at *2. The DBM II decision demonstrates that this court thought there was time remaining to add Sanders under the extinguishment statute. Otherwise, we would not have remanded. DBM's argument about piecemeal appeals is not well taken.

period in which to bring a claim based specifically on a fraudulent transfer to an insider for an antecedent debt:

> A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: .
>
> (a)  Under RCW 19.40.041(a)(1), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonable have been discovered by the claimant;
>
> (b)  Under RCW 19.40.041(a)(2) or 19.40.051(a), within four years after the transfer was made or the obligation was incurred; or
>
> (c)  Under RCW 19.40.051(b), within one year after the transfer was made or the obligation was incurred.

RCW 19.40.091.  Although the statute is known as an extinguishment provision, the Washington Supreme Court has referred to it as a statute of limitations provision for the UFTA.  See Freitag v. McGhie, 133 Wn.2d 816, 817, 820, 947 P.2d 1186 (1997).

DBM argues that this court already decided that DBM's 2005 postjudgment motion to levy on assets was "brought" within the one year period and satisfied the insider provision of the extinguishment statute.  Two questions were raised in DBM II: (1) whether a party must raise an UFTA claim in a new, separate action or if it may do so in a supplemental proceeding via a postjudgment motion and (2) whether a transferee of the allegedly transferred asset is a necessary party to the proceeding.  DBM II, 2010 WL 3490240, at *2.  We concluded that a postjudgment "motion to levy on assets was an appropriate way to gain relief under the UFTA.  And, since the motion was made within one year after the transfer, DBM's claim was not extinguished."  Id.

DBM implicitly argues this language means that the filing of its 2005 motion permanently tolled the one year statute of limitations period.  But, the reference to the

extinguishment statute in DBM II was meant to address SCV's argument that DBM's failure to commence a separate lawsuit for its UFTA claim within a one year period, rather than a supplemental proceeding within a one year period, extinguished the claim. DBM II, 2010 WL 3490240, at *1. The issue was the propriety of the type of proceeding for the adjudication of an UFTA claim. A new UFTA action had not been commenced at all. Thus, we were not asked to consider what steps were required to "bring" an UFTA action under the language of RCW 19.40.091(c). DBM II does not hold that the mere filing of DBM's 2005 motion to levy on assets satisfied and permanently tolled the statute of limitations on that claim.

RCW 19.40.091(c) requires that an UFTA action be brought within one year of the alleged transfer. We held in the previous appeal that a transferee is a necessary party to an action seeking to set aside an alleged fraudulent transfer. DBM II WL 3490240, at *2. We now hold that an action has not been "brought" via supplemental proceedings under RCW 19.40.091(c) unless the motion to levy on assets has been filed and all necessary parties have been served within the one year period.[6]

Having squarely addressed this question, we conclude that Sanders was not served within the statutory period. Assuming some portion of the statutory period remained at the time of remand in DBM II, it was necessarily less than one year. The

---

[6] Under RCW 4.16.170, either serving the summons or filing the complaint commences an action and tolls an expiring statute of limitations as long as both occur within a 90 day period. Wothers v. Farmers Ins. Co., 101 Wn. App. 75, 79, 5 P.3d 719 (2000). The filing of a complaint may toll the statute of limitations for a period of time to effectuate service, but if service is not made within the statutorily proscribed period, any tolling that has occurred under the statute of limitations is lost. Neither party here has cited to any authority that suggests there is a specific tolling period under which DBM was afforded additional time to serve Sanders after filing the motion initiating the supplemental proceeding. If RCW 4.16.170 applies here, it had no effect on the outcome.

record is clear that DBM only successfully served Sanders with its third order to show cause on March 6, 2014, nearly three years after the mandate. DBM's UFTA claim was extinguished as a matter of law pursuant to RCW 19.40.091(c) before the time DBM successfully served Sanders. Therefore, the trial court lacked authority to enter an order granting DBM's motion for summary judgment.

In light of this holding, we need not address whether the promissory notes and cash at issue were secured and thus not subject to the UFTA.

## III.   Attorney Fees

SCV argues that it is entitled to attorney fees incurred in the supplemental proceedings below and those incurred on appeal. It contends this is so, because this court already awarded it attorney fees under the contract it had with DBM in DBM II. DBM appears to concede that the prevailing party is entitled to attorney fees based on the prior fee awards in the case.

This court will award attorney fees to the prevailing party only on the basis of a private agreement, statute, or a recognized ground of equity. Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn. App. 497, 506, 761 P.2d 77 (1988). The underlying contract between DBM and SCV is not in the record. But, the DBM II court recited the relevant language: " 'In the event that Consultant prevails in any action between Client and Consultant, Client should pay Consultant's legal expenses, including attorney's fees, court costs and experts' fees.' " DBM II, 2010 WL 3490240, at *3. Under RCW 4.84.330, such provisions are deemed a bilateral entitlement to fees and costs.

Because we conclude that DBM's fraudulent transfer claims are time barred, SCV is the prevailing party on appeal. We reverse the trial court's order awarding DBM

8

attorney fees for the period of March 4, 2011 to the date of the entry of the supplemental judgment. Based on the language of the underlying contract and RAP 18.1, we remand to the trial court for an award of attorney fees from the date of the mandate in DBM II forward, including fees on appeal. See RAP 18.1(i) (stating that the appellate court may direct that the amount of fees and expenses be determined by the trial court after remand).

We reverse and remand to the trial court for an award of attorney fees to SCV.

_____

WE CONCUR:

_____    _____
Cox, J.