# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MIKE VAN VALKENBURG a/k/a MICHAEL ALLEN VAN VALKENBURG,<br><br>           Respondent,<br><br>           v.<br><br>MESHESHA TADESSE, individually and on behalf of his marital community,<br><br>           Appellant.<br><br>YET OIL AND BRAKE SERVICES LLC, a Washington limited liability company; LEO.RAH LLC d/b/a SASHA'S BIKINI ESPRESSO, a Washington limited liability company; and ANY OTHER OCCUPANTS OF THE PROPERTY LOCATED AT 2006 RAINIER AVENUE SOUTH, SEATTLE, WA 98144,<br><br>           Defendants. | No. 85281-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Meshesha Tadesse appeals a judgment against him that found him in unlawful detainer of a commercial property owned by Michael Van Valkenburg and liable for unpaid obligations under the parties' lease agreement. Substantial evidence supports the trial court's findings of fact, which in turn support the trial court's conclusions of law. We affirm and award reasonable attorney fees and costs to Van Valkenburg pursuant to the lease's attorney fees provision.

I[1]

Van Valkenburg owns seven to nine properties and has been leasing them out for 35 years. One of these properties is the commercial property at issue in this case, which is located in Seattle. In January 2020, Budget Batteries Inc., the previous tenant, contacted Van Valkenburg to have Tadesse take over the lease to the property. Van Valkenburg drafted a lease agreement and sent it to Tadesse, who expressed interest in eventually converting the property from a service station into a coffee shop. The lease was for a term of three years beginning on January 1, 2020. Absent Van Valkenburg's written consent, the premises could be used only for the business of a coffee shop and brake and oil repair shop. Under the terms of the agreement, Van Valkenburg was required to maintain the structure of the building, roof, common areas, and parking lot in good condition. Tadesse was required to pay $3,000.00 per month for rent, pay 100 percent of all taxes levied against the property, and reimburse Van Valkenburg for insurance premiums on the property. The agreement prohibited Tadesse from subleasing any part of the property without Van Valkenburg's written consent. Under an option to renew clause, Tadesse was entitled to a three year option to renew the lease only if he was current on his obligations under the lease. The agreement contains an

---

[1] The substantive facts in this opinion are drawn from the trial testimony and the trial court's unchallenged findings of fact. Unchallenged findings of fact are accepted as true on appeal. Tedford v. Guy, 13 Wn. App. 2d 1, 12, 462 P.3d 869 (2020). While neither party designated the trial exhibits for purposes of this appeal, the trial exhibit list describes two exhibits admitted as attachments to Van Valkenburg's declaration, which are included in the clerk's papers. Van Valkenburg's declaration was filed in support of his motion for order to show cause why a writ of restitution should not be issued and motion for order directing issuance of a writ of restitution.

attorney fee provision, which states, "If legal notices, suit or action is instituted in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover, in addition to costs, reasonable attorney fees." Van Valkenburg and Tadesse both signed, but did not separately include dates next to their signatures, and a notary public notarized, signed, and dated the agreement on February 1, 2020.

According to a "Statement of Account" prepared by Van Valkenburg's counsel, Tadesse fairly consistently met his rent obligations only in 2021, paid the annual insurance premium only one out of three times, and missed all three annual property tax payments. Despite this history of missed payments, Van Valkenburg agreed to renew Tadesse's lease starting December 2022, increasing the rent to $3,500.00 per month.

Tadesse subleased part of the property at some point to a former barista in his coffee shop and collected $2,700.00 in monthly rent from her, but never remitted any portion of those payments to Van Valkenburg. On February 8, 2023, Van Valkenburg gave notice to Tadesse, LEO.RAH LLC doing business as "Sasha's Bikini Espresso," and all other occupants of the property that they were in default of rent and other payment obligations totaling $36,135.38. The notice told the occupants to pay the total amount in default or surrender the premises within three days after service of the notice.

On February 23, 2023, Van Valkenburg filed a complaint against Tadesse, YET Oil and Brake Services LLC, and Sasha's Bikini Espresso, alleging unlawful

3

detainer and breach of contract. Tadesse filed his answer, a motion to dismiss Van Valkenburg's complaint, and a supporting affidavit, where he advanced a forgery counterclaim based on the copy of the lease agreement Van Valkenburg submitted and requested an award of $50,000.00. Tadesse further alleged he had incurred expenses to repair the premises and install new equipment, he struggled to pay rent as a result of COVID-19, and Van Valkenburg's motivation for seeking his eviction was to sell the property at a profit. Trial commenced on April 17, 2023 and lasted one day. Van Valkenburg, Tadesse, and Tadesse's expert witness James Green testified.

Van Valkenburg denied being told about a leak in the roof and stated Tadesse had told him that the roof was fixed. Van Valkenburg testified that in December 2022 or early January 2023, Tadesse said he owed him $8,400.00 for roof work, but Van Valkenburg never received any pictures of the work, information on who did the work, or a receipt from a licensed contractor that the work was completed. Van Valkenburg testified he learned Tadesse subleased the property only after the sublessee reached out to him about a power problem on the property. This was also the first time Van Valkenburg learned about a power issue on the property. Van Valkenburg had not given Tadesse permission to sublease the property.

On April 19, 2023, the trial court entered its findings of fact, conclusions of law, and final judgment. The trial court found Tadesse was in unlawful detainer of the property, awarded a principal judgment of $32,135.38 to Van Valkenburg,

4

dismissed Tadesse's counterclaim with prejudice, and awarded attorney fees and costs to Van Valkenburg. Tadesse appeals.

II

We review a trial court's findings of fact in an unlawful detainer action for substantial evidence. Tedford v. Guy, 13 Wn. App. 2d 1, 12, 462 P.3d 869 (2020). We begin with a presumption in favor of the trial court's findings and the appellant has the burden of showing that a finding of fact is not supported by substantial evidence. Lang Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015). Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true. Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 794-95, 432 P.3d 821 (2018). Where evidence conflicts, we need only determine " 'whether the evidence most favorable to the prevailing party supports the challenged findings.' " State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019) (quoting Prostov v. Dept. of Licensing, 186 Wn. App. 795, 820, 349 P.3d 874 (2015)). We will not reweigh the evidence or the credibility of the witnesses on appeal. Id. at 15. After reviewing the findings of fact, we then decide whether those findings support the trial court's conclusions of law. Tiller v. Lackey, 6 Wn. App. 2d 470, 484, 431 P.3d 524 (2018). Conclusions of law are reviewed de novo. Tedford, 13 Wn. App. 2d at 12. Unchallenged findings of fact are accepted as true on appeal. Id. Unchallenged conclusions of law become the law of the case. The-Anh Nguyen v. City of Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

A

Although not directly challenged by Van Valkenburg, we first address Tadesse's failure to specify the findings of fact he challenges in his opening brief.

RAP 10.3(g) requires a separate assignment of error for each challenged finding of fact with reference to the finding by number. The rules of appellate procedure are to "be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2(a). We wield discretion to consider cases and issues on the merits under RAP 1.2. State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). This discretion should be exercised unless there are compelling reasons not to do so. Id. Where the nature of the appeal is clear and the relevant issues are argued, citations provided, and the respondent is not prejudiced, there is no compelling reason for an appellate court to not consider the merits of the case or issue. Id.

Tadesse's opening brief failed to comply with RAP 10.3 because Tadesse did not identify the specific findings of fact he is challenging. Courts hold pro se litigants to the same standards as attorneys. In re Vulnerable Adult Pet. for Winter, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020). But the issues Tadesse raised were sufficiently clear for Van Valkenburg to discern and answer. This is evinced by the fact that Van Valkenburg explicitly outlines in his brief the findings and conclusions he believes Tadesse is challenging and addresses them accordingly.

We exercise our discretion and consider the assignments of error that are properly before us. We set forth the specific findings of fact we deem sufficiently challenged below. The remaining findings of fact are accepted as true.

B

Tadesse challenges finding of fact 2, which states,

On January 24, 2020, Plaintiff Michael Van Valkenburg and Meshesha Tadesse executed an agreement for the lease of the Property from January 1, 2020 to December 31, 2022 (the "Lease").

The lease agreement states the lease begins on January 24, 2020 and both Van Valkenburg and Tadesse signed the agreement. Although neither Van Valkenburg or Tadesse separately affixed dates to those signatures, the trial court was entitled to believe that the date listed at the top of the lease agreement was the date of its execution. The date listed on the lease agreement and Van Valkenburg's testimony about the December 2022 lease renewal supports a three year lease term from January 1, 2020 to December 31, 2022. Tadesse made payments for rent and one payment for annual insurance premiums along the terms laid out in the lease agreement. Substantial evidence supports finding of fact 2.

Tadesse challenges finding of fact 5, which states,

On February 1, 2020, Defendant Tadesse had his signature witnessed and acknowledged by Notary Public Maricarmen Magana.

Van Valkenburg testified he believed he received the signed, notarized lease agreement back from Tadesse and did not have the document notarized himself. Tadesse denied having the lease agreement notarized in 2020. On cross-examination, Van Valkenburg's counsel referenced a declaration Magana signed

where she certified that she worked at a Well Fargo Bank branch in Seattle in 2020 and notarized documents as part of her job. Magana stated she notarized Tadesse's signature on February 1, 2020 and her practice would have been to obtain Tadesse's identification, witness him sign the document, then notarize his signature. This declaration was not admitted as a trial exhibit. But Tadesse agreed that he made early 2020 payments from a Wells Fargo Bank branch in Seattle and testified he had no reason to believe Magana was lying in that declaration. The trial court was entitled to credit Van Valkenburg's testimony and reject Tadesse's. Finding of fact 5 is supported by substantial evidence.

Tadesse challenges finding of fact 6, which states,

Between January 1, 2020 and November 30, 2022, Mr. Tadesse failed to pay amounts due under the Lease in the sum of $32,135.38.

Van Valkenburg testified that Tadesse never paid him any property taxes or reimbursed for insurance premiums, other than a one time payment of $1,000.00. Van Valkenburg testified at length about three of his bank statements from 2020, 2021, and 2022 that tracked the payments Tadesse made. These exhibits were admitted into evidence. The trial court also admitted Van Valkenburg's statement of account that summarized the charges to Tadesse and payments made against those charges from January 2020 to February 2023. Van Valkenburg stated this ledger looked true and correct to the best of his knowledge. At the time the parties renewed the lease in December 2022, Tadesse owed $32,135.38. By February 2023, Tadesse's outstanding balance totaled $36,135.38. Van Valkenburg testified he eventually spoke with Tadesse about his outstanding balance and

8

explained that based on the terms of the lease agreement, Tadesse was required to pay the property taxes and reimburse him for the insurance payments, to which Tadesse said he would. In 2020, Van Valkenburg reminded Tadesse once or twice about the outstanding payments that he owed. Tadesse testified he made all required payments under the lease including the rent he owed and disagreed that he was obligated to pay the property taxes. The trial court declined to award any amount due on the December 2022 lease renewal because Van Valkenburg "was on notice that [Tadesse] was unable/unwilling to reliably and fully pay the rent." The trial court's determination of $32,135.38 as the amount due is supported by Van Valkenburg's testimony and the statement of account.

Tadesse argues on appeal that at the signing of the lease agreement, Tadesse asked Van Valkenburg about property tax payments and insurance premium costs and Van Valkenburg allegedly responded, " 'Do not worry about it; just pay $3,000 every month.' " Even if these statements had been before the trial court in evidence, the trial court would not have been required to credit them. Finding of fact 6 is supported by substantial evidence.

Tadesse challenges conclusions of law 2 and 3, which state,

Mr. Tadesse breached the terms of the lease by failing to pay rent and property taxes, and failing to reimburse Mr. Van Valkenburg for insurance on the property.

. . . . As a result of Mr. Tadesse's breaches of the Lease, Mr. Van Valkenburg was damaged in the amount of $32,135.38.

Unchallenged finding of fact 3 states the lease agreement obligated Tadesse to pay base rent of $3,000.00, property taxes due on the property, and to reimburse

9

Van Valkenburg for property insurance. By failing to meet his payment obligations under this agreement and accruing a total unpaid balance of $32,135.38, Tadesse breached the terms of the lease agreement. Findings of fact 2, 3, and 6 support conclusions of law 2 and 3.

Tadesse challenges conclusion of law 5, which states,

> Mr. Tadesse neither paid rent nor quit the premises, placing him in unlawful detainer of the property.

A person who continues in possession of real property after defaulting by failing to pay rent is liable for unlawful detainer. RCW 59.12.030(3); Sprincin King St. Partners v. Sound Conditioning Club, Inc., 84 Wn. App. 56, 63, 925 P.2d 217 (1996). RCW 59.12.030(3) requires the landlord to provide notice in writing that permits the tenant to pay the outstanding rent owed or the surrender the detained premises three days after service of the notice. An unlawful detainer action is "a summary proceeding for obtaining possession of real property." Fed. Nat'l Mortg. Ass'n v. Ndiaye, 188 Wn. App. 376, 382, 353 P.3d 644 (2015). "The action is a narrow one, limited to the question of possession and related issues such as restitution of the premises and rent." Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985).

In an unchallenged conclusion of law, the trial court noted that Tadesse was validly served with the required statutory notice to pay rent or quit the premises pursuant to RCW 59.12.030 and .040. Van Valkenburg testified he had the right to give Tadesse three day notice when he had not paid rent and not paid back property taxes, so "that's the process we took." Because Tadesse defaulted by

failing to pay his rent and Van Valkenburg properly served Tadesse with the required notice to vacate the property or pay, Tadesse was in unlawful detainer of Van Valkenburg's property. Findings of fact 2 and 6 and conclusion of law 4 support conclusion of law 5.

Tadesse challenges conclusion of law 6, which states,

At Mr. Tadesse's request, the Court allowed Mr. Tadesse to pursue his counter-claim that the lease was a forgery, which the Court accepted as a fraud cause of action. The Court heard testimony from forensic document examiner, Mr. Green. The Court did not find that any forgery occurred.

Tadesse argues Van Valkenburg impermissibly altered the lease agreement after he signed it and failed to provide a copy of the revised lease agreement to him. If findings of fact are mischaracterized as conclusion of law, we analyze them as findings of fact. Real Carriage Door Co., Inc. ex rel. Rees v. Rees, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021).

There are several handwritten notations on the lease agreement. Van Valkenburg testified he added notes for himself and since his children have started getting involved in his business, they can refer to the notes for help. Van Valkenburg testified he mistakenly wrote "2003" as the end date for the lease, crossed out "2003" and corrected it to "2022." This also led him to write "please sign and send original back to me" at the bottom of that page. Next to the lease's option to renew clause, Van Valkenburg had written "3,500.00 per month amount," but could not remember if he wrote that in 2020. The remainder of the handwritten notes are located at the bottom of the lease. At the time of the lease renewal in

December 2022 and after having spoken on the phone with Tadesse, Van Valkenburg testified that he wrote, "This is a NNN lease 3000.00 3 year" and "3,500.00 for Mesh starting Dec 2022." Van Valkenburg included his initials and signatures after these notes at the end of the lease.

Green is a forensic document examiner. Green testified he was asked to compare the three page lease Tadesse reportedly received from Van Valkenburg with the six page lease Van Valkenburg subsequently provided to Tadesse. Green discussed several observations: the difference in page length between the two documents, the difference between notation marks and the top of the first page between the two documents, the lack of any handwritten notes in the three page lease, and the lack of a notary block on the three page version. Those differences led Green to conclude that further exploration should be considered. Green created a report containing his observations and conclusions, which the trial court denied admission into evidence. On cross-examination, Green agreed that it is possible that Tadesse "may have omitted a page or two" from the documents he was given, and at least the signatures of the parties appear consistent.

Substantial evidence exists to support the trial court's finding that no forgery occurred. Although Green noted some discrepancies between the two agreements Tadesse provided him, several of the differences could be explained by omitting pages from one of the agreements. Van Valkenburg described a logical explanation for his handwritten notations on the lease. Tadesse's actions after December 2022 in paying $3,500.00 at the end of the month corroborate the

renewal agreement's terms as described by Van Valkenburg's testimony and handwritten notes on the original lease. The trial court did not erroneously enter conclusion of law 6.

The trial court's challenged findings of fact and conclusions of law are supported.

C

Tadesse makes several additional arguments.

Tadesse cites case law discussing the standards for the admissibility of evidence, including expert opinion, and accuses Van Valkenburg of intentionally providing fabricated documents to mislead the court. We read Tadesse's arguments not as challenging the admissibility of the evidence presented, but rather the weight and persuasiveness given to what was admitted by the trial court. We do not reweigh the evidence or the credibility of the witnesses on appeal.

Tadesse contends the trial court failed to ask questions of Van Valkenburg and his expert witness. ER 614(b) permits the court to question witnesses called by a party during a bench trial. But the rule does not require trial judges to question witnesses, and Tadesse cites no authority to support this argument.

Tadesse cites RCW 9A.60.010 and .020, the definitions section for the criminal chapter on fraud and the criminal forgery statute, claiming Van Valkenburg violated these statutes by refusing the fix damage to the property. However, the trial court found, based on substantial evidence, that no forgery occurred. Further,

these statutes fall outside scope of an unlawful detainer action and therefore our review.

Tadesse argues the trial court lacked impartiality, perhaps on account of Tadesse being a minority, and the trial court was "harsh and inconsiderate" to him and "acted contrary to the Judicial Canon." While Tadesse does not point us to specific statements by the trial court to support his argument, our review of the record reveals that the trial judge exhibited patience and understanding when explaining trial proceedings, the appropriate form of questions during cross-examination, and objections to the admissibility of exhibits. Nothing in the record demonstrates that the trial court exhibited bias against Tadesse's theory of his case or Tadesse individually.

Tadesse contends Van Valkenburg avoided repairing the damaged building's roof and electrical panel as required under RCW 62A.2A-301. That statute states, "Except as otherwise provided in this Article, a lease contract is effective and enforceable according to its terms between the parties, against purchasers of the goods and against creditors of the parties." Id. This statute is not applicable and Van Valkenburg's testimony makes clear that these issues were not brought to his attention or sufficiently supported by documentation for him to take action. The trial court was entitled to credit this testimony over Tadesse's.

For the first time on appeal, Tadesse argues Van Valkenburg violated the Consumer Protection Act, chapter 19.86 RCW. Because Tadesse did not make

this argument before the superior court, we decline to address this claim. RAP 2.4(a). .

For the first time on reply, Tadesse advances new bases for relief: the trial court's alleged violation of RCW 4.44.070 and .080 and that Van Valkenburg allegedly committed perjury and fraud. We decline to reach those arguments. RAP 10.3(c); Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014) ("We will not consider issues argued for the first time in the reply brief. The reply brief is limited to a response to the issues in the responding brief. To address issues argued for the first time in a reply brief is unfair to the respondent and inconsistent with the rules on appeal." (citation omitted)).

On April 5, 2024, after having filed his reply brief as authorized by RAP 10.1(b), Tadesse filed a "petition for extraordinary urgent action for injunction & sanction," an affidavit he signed and had notarized on April 4, 2024, and two exhibits. In this filing, Tadesse discusses several issues he raised in his briefs, such as the credibility of Van Valkenburg's testimony and the trial court's alleged partiality. Tadesse also raises new issues, such as whether the trial court received materials he submitted before trial. Tadesse's affidavit and one of the attached exhibits appear to be additional evidence outside our record. Under RAP 10.1(b), the parties "may" files the briefs listed there, and under RAP 10.1(h), the court on motion may direct the filing of other briefs. The rules contemplate that briefs other than those listed in RAP 10.1(b) may be filed only with leave of court. Tadesse did not obtain leave of court to file an additional brief as required by RAP 10.1(h).

15

Further, RAP 9.11(a) allows this court to take additional evidence only if six criteria are met. Tadesse does not address these six requirements. City of Seattle v. Seattle Police Officers' Guild, 17 Wn. App. 2d 21, 60, 484 P.3d 485 (2021). We have reviewed Tadesse's new filing and conclude it is both impermissible under the Rules of Appellate Procedure and, in addition, does not raise any issue that would affect the analysis of the arguments properly before the court.

III

Van Valkenburg requests attorney fees on appeal pursuant to RAP 18.1.

"We will award attorney fees to the prevailing party 'only on the basis of a private agreement, a statute, or a recognized ground of equity.' " Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 731, 308 P.3d 644 (2013) (quoting Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn. App. 497, 506, 761 P.2d 77 (1988)). " 'A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1.' " Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009) (quoting W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick, 39 Wn. App. at 477, 694 P.2d 1101 (1985)). Pursuant to RCW 4.84.330, the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs where the contract so provides. Reeves v. McClain, 56 Wn. App. 301, 311, 783 P.2d 606 (1989). A prevailing party is one in whose favor final judgment is rendered. RCW 4.84.330.

Van Valkenburg is the prevailing party in this appeal. The trial court awarded Van Valkenburg "reasonable contractual attorneys' fees and costs"

based on the terms of the lease.  Tadesse does not challenge that award and the same provision entitles Van Valkenburg to reasonable attorney fees and costs on appeal.  These shall be determined by a commissioner of this court, subject to Van Valkenburg's compliance with RAP 18.1(d).  Because Tadesse is not the prevailing party, he is not entitled to the affirmative relief he requests.

Affirmed.

Birk, J.

WE CONCUR:

Díaz, J.

Smith, C.J.