# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID K. BOWERS and KATHRYN E. BOWERS, husband and wife; ROBERT COBB and DEBRA A. COBB, husband and wife; and ANTHONY L. BELTRAME and MAGGIE BELTRAME, husband and wife, | No. 48367-0-II Consolidated with No. 48697-1-II |
| Respondents, | |
| v. | UNPUBLISHED OPINION |
| JAMES W. DUNN, dealing in his separate property and 'JANE DOE' DUNN, | |
| Appellants. | |

MAXA, A.C.J. – This case involves a dispute between James Dunn and his neighbors David and Kathryn Bowers, Robert and Debra Cobb, and Anthony and Maggie Beltrame (collectively "the Bowers") regarding an easement and private road on their properties. In this consolidated appeal, Dunn appeals the trial court's issuance of orders restricting his contact with the Bowers and establishing the parties' rights and responsibilities regarding maintenance of the road. The trial court entered both of these orders over a year after a bench trial addressing the parties' use of the road.

Regarding the order restricting contact, we hold that the trial court erred in entering the order because (1) the court did not have statutory authority under chapter 7.40 RCW to issue an injunction restricting contact; and (2) although the court had equitable authority to issue such an

injunction, an injunction was not warranted because the Bowers had an adequate remedy under the antiharassment provisions of chapter 10.14 RCW. Regarding the road maintenance order, we hold that the trial court had equitable authority to enter most of the provisions of the road maintenance order, but erred in including certain provisions and in applying the order to nonparties.

Accordingly, we affirm in part, reverse in part, and remand to the trial court with instructions to vacate the order restricting Dunn's contact with the Bowers, strike certain provisions of the road maintenance order, and make revisions to the road maintenance order consistent with this opinion.

FACTS

*Private Road/Easement*

Dunn, the Bowers, the Cobbs, and the Beltrames owned adjacent lots in Lake Tapps. A private road/easement was created by the original 1977 short plat and was identified in two 1984 short plats. The private road/easement ran along the northern borders of the Dunn, Bowers, and Cobb properties and ended at the border of the Beltrame property. That road provided the only access to the Bowers, Cobb, and Beltrame properties from a public road.

The original 1977 short plat stated:

> Said developer and/or adjoining landowners and their successors shall bear the expense of constructing and maintaining all private roads and easements on this plat.

Clerk's Papers (CP) I at 42. The two 1984 short plats subdividing the lots stated:

> All lot ownerships shall include thier [sic] adjoining portions of property for the private road easement as shown on the plat. Said developer and/or adjoining landowners and the successors shall bear the expense of constructing and maintaining all private roads and easements on this plat.

2

CP I at 44, 45.

For several years, Dunn, the Bowers, the Cobbs, and the Beltrames all contributed financially to the expenses associated with maintaining the road and cooperated in its maintenance.

*The Bowers' Lawsuit*

Beginning in the fall of 2012, Dunn began a series of actions in reaction to his perception that traffic was traveling too fast on the private road. Those actions included installing three speed bumps on the portion of the private road and easement that was on his property to slow the speed of his neighbors' vehicles.

The Bowers filed a lawsuit against Dunn in January 2013.[1] They alleged that Dunn had taken several actions that interfered with their use and enjoyment of the private road, which included building the speed bumps, parking vehicles on the easement, burying a storm drain, staking rebar into the easement, posting a 5 mph speed limit sign, and erecting threatening signs. They also alleged that, when questioned, Dunn responded to them with profanity. The Bowers requested a declaration confirming the express easement and their right to use the private road, damages for trespass, and a permanent injunction against Dunn to prevent interference with the Bowers' use of the easement. The Bowers' complaint did not include a request for an injunction restricting Dunn's contact with them.

After being served with the lawsuit, Dunn added three more speed bumps to the private road. The Bowers later removed all the speed bumps without Dunn's consent.

---

[1] David and Kathryn Bowers alone filed the initial lawsuit, but later filed an amended complaint adding the Cobbs and Beltrames as plaintiffs.

In his answer, Dunn alleged that the Bowers had driven on the road at excessive speeds, creating dust, noise, and unsafe conditions. He asserted counterclaims for nuisance and for trespass relating to the Bowers' removal of the speed bumps.

*Bench Trial*

The trial court conducted a bench trial in January 2014. Following the trial, the trial court entered findings of fact and conclusions of law on March 19.

The trial court concluded that (1) the Bowers, Cobbs, and Beltrames were owners of the express easement, were entitled to travel across the Dunn property to access their lots, and were entitled to relief enjoining Dunn from interfering with their use of the road easement; (2) traveling on the road at excess speeds created dust, noise, and flying gravel that had harmed Dunn, and therefore Dunn could install one speed bump on the portion of the road on his property; (3) Dunn was not entitled to damages for the removal of his speed bumps; and (4) the trial court would retain jurisdiction over the matter.

The trial court issued a separate order and judgment on March 19 stating that Dunn was entitled to install and maintain one speed bump across the easement road on his property. The court further ordered that all parties must provide notice to each other before starting construction on the easement road. Neither party appealed the March 2014 order and judgment.

The trial court did not include any provisions restricting Dunn's contact with the Bowers in its findings of fact and conclusions of law or in the March 2014 order and judgment.

*Further Dispute and Order Restricting Contact*

On July 22, 2014, the Bowers filed a motion to enforce the March 2014 order regarding the use of the easement road and to "order Defendant James Dunn to cease and desist all

4

harassing conduct towards the Plaintiff[s]." Supp. CP I at 120. They filed multiple declarations alleging that since the trial in January, Dunn had engaged in abusive behavior regarding the road and harassing conduct toward them. On August 1, the trial court entered an order requiring Dunn to restore the easement to its January 2014 condition and stating that Dunn "shall not violate *this Court's order that Defendant shall not have contact with the Plaintiffs*." CP I at 69 (emphasis added). The trial court also awarded attorney fees of $500 to the Bowers. However, nothing in the record shows that the trial court entered an order restricting Dunn's contact with the Bowers before the August 2014 order.

In March 2015, the Cobbs sold their property to Josiah and Jennifer Lewis and moved away from the neighborhood. But the Lewises were not added as parties to the lawsuit and the Cobbs were not removed.

In May 2015, the Bowers filed a "Motion for Judgment, Clarification of Court Order, Contempt and Additional Attorney's Fees." CP I at 70. The Bowers requested that the trial court enter an order imposing a judgment for the prior award of attorney fees, clarifying the court's reference to a no-contact order in the August 2014 order, and holding Dunn in contempt for failure to comply with the court's August 2014 order regarding repairs to the easement road. They filed three declarations in support of the motion.

Kathy Bowers submitted a declaration in which she recognized that in "the orders entered at the conclusion of trial, there was no specific order restricting Mr. Dunn's ability to have contact." CP I at 72. However, all three declarations urged the trial court to enter an order restricting Dunn's contact with them. Kathy Bowers alleged that Dunn often drove down the road and sat in front of her home, made rude gestures and yelled profanities, pulled down his

pants and urinated outside when she drove past, tossed beer cans and rotten food onto her property, and called her disgusting names. The declarations also asserted that Dunn had driven recklessly on the easement road, parked a wrecked vehicle in the road, and failed to repair the road as the court had ordered.

The trial court held a hearing on the motion on June 5. The transcript of this hearing is not in the record. On October 16, the court entered an order relating to the June 5 hearing. The order stated that Dunn was not in contempt of court, but directed Dunn to complete road repairs within 14 days. The order also stated, "James Dunn is hereby ordered not to have verbal or non-verbal contact with the Plaintiffs either directly or through third parties. James Dunn is authorized by this court to have written contact with the Plaintiffs only for the express purpose of giving notice of road repairs." CP I at 113-14. Dunn objected to entry of this provision.

*Road Maintenance Order*

In September 2015, the Bowers submitted a proposed road maintenance agreement. Their attorney's declaration stated that the trial court had ordered entry of a road maintenance agreement at the June 5 hearing, and the Bowers asked the court to enter the proposed agreement. Dunn objected to the entry of the agreement.

The trial court subsequently sent a letter to the parties regarding the Bowers' proposed road maintenance agreement. The court stated that it could not compel the parties to enter the proposed agreement, but that it could "craft an order which effectively place[s] the parties in the same position as [they] would have been had they been willing to agree." CP II at 111. On December 9, the trial court entered an "Order Regarding Parties['] Rights and Responsibilities in

Maintenance of Road." CP II at 113. The court's order was similar in many respects to the agreement the Bowers had proposed.

The trial court's road maintenance order stated that the court "enters the following order outlining the rights, duties and obligations of all parties" to the easement road. CP II at 114. The order required all parties to "maintain and repair the existing road in a manner consistent with the nature and quality of the road during the past twenty five years." CP II at 115 (paragraph 2.1). The order also required all parties to share any road maintenance and repair costs equally and to pay an equal share of maintenance expenses up to a set amount each year, to be agreed on by the parties.

In addition, the order provided specific rules regarding the road surface, obstructions, speed bumps, parking, trespass and surveillance, and provided a speed limit of 10 mph. The order established notice requirements for repairs to utility systems, required parcel owners who damaged the roadway surface over the easement to immediately restore the road surface, stated that four out of the five parcel owners must agree to install a sign, and required the parties to resolve disputes regarding the order's interpretation in the trial court.

The trial court included findings in the road maintenance order. Paragraph 1.1 of the order stated, "Each parcel referenced in Exhibit A hereto [listing the lots at issue] and incorporated by this reference *and parcel number 0520177110*, use the roadway described above for ingress and egress and the parcels both benefit from and are burdened by the easement." CP II at 115 (emphasis added). Parcel number 0520177110 was owned by Robert and Pamela Jones and bordered the private road easement on the opposite side of the Bowers' and Dunn's lots. The Joneses' property was not a part of the 1977 short plat and the Joneses were not a party to

7

the underlying litigation. The Lewises, who purchased the Cobbs' property, also were not parties to the litigation.

Dunn appeals the trial court's October 16, 2015 order restricting his contact with the Bowers and the December 9, 2015 order regarding road maintenance.

ANALYSIS

A.    ORDER RESTRICTING DUNN'S CONTACT

Dunn argues that the trial court lacked authority to enter a post-judgment order restricting his contact with the Bowers.[2] The Bowers assert that the provision restricting contact was an injunction,[3] which the trial court had authority to enter both under chapter 7.40 RCW and under its general equitable powers. We hold that (1) the trial court did not have statutory authority under chapter 7.40 RCW to issue an injunction restricting contact; and (2) although the trial court had equitable authority to issue an injunction restricting contact, the trial court erred in exercising this authority because the Bowers had a speedy and adequate statutory remedy under the antiharassment provisions of chapter 10.14 RCW.

1.    Standard of Review

The Bowers argue that the trial court had authority under chapter 7.40 RCW and under its general equitable powers to enter an injunction restricting Dunn's contact with them. We review

---

[2] Dunn also argues that, even if the trial court had authority to enter the no-contact provision, it is overbroad and vague. Because we reverse on other grounds, we do not address this argument.

[3] The trial court did not state the nature of its provision restricting contact or the authority under which it imposed the restriction. But the Bowers claim that the provision is an injunction, and Dunn does not object to that characterization. Therefore, we consider only whether the provision restricting contact was authorized as an injunction. We do not consider whether the trial court had authority to restrict Dunn's contact with the Bowers on other grounds.

de novo whether the trial court has statutory authority. *In re Marriage of Schneider*, 173 Wn.2d 353, 358, 268 P.3d 215 (2011). On the other hand, we review a trial court's exercise of equitable authority for abuse of discretion, considering whether the grant of equitable relief is based on tenable grounds or tenable reasons. *Weidert v. Hanson*, 172 Wn. App. 106, 110, 288 P.3d 1165 (2012).

      2.    Authority Under Chapter 7.40 RCW

RCW 7.40.010 states that "injunctions may be granted by the superior court." RCW 7.40.020 provides three primary grounds for issuing an injunction: (1) when "it appears by the complaint that the plaintiff is entitled to the relief demanded" and that relief consists of restraining an act, which if committed during the litigation would produce great injury to the plaintiff; (2) when during the litigation the defendant does or threatens to do "some act . . . in violation of the plaintiff's rights respecting the subject of the action tending to render the judgment ineffectual"; or (3) where the plaintiff's relief "consists in restraining proceedings upon any final order or judgment," a court may grant an injunction to restrain such act or proceedings until further order of the court.[4]

Here, none of the three primary grounds in RCW 7.40.020 are applicable. The first ground depends on the plaintiff's entitlement to the relief demanded in the complaint. RCW 7.40.020. But the Bowers did not request an order restricting contact in their complaint or at any time before trial and judgment.

---

[4] RCW 7.40.020 also provides for a temporary injunction to prevent the defendant from removing or disposing of property with the intent to defraud creditors.

The second ground involves a violation of the plaintiff's rights with respect to the subject of the action. RCW 7.40.020. But the subject of the Bowers' action was their use of the private road. The action was focused on Dunn's conduct regarding the road itself, not his conduct toward the Bowers personally. The trial court's ruling prevented Dunn from interfering with the use of the road, and Dunn's contact with the Bowers would not render that ruling ineffectual.

The third ground applies when the plaintiff attempts to restrain "proceedings" pursuant to a final order or judgment. RCW 7.40.020. But the Bowers are not attempting to restrain any such acts or proceedings.

Further, RCW 7.40.040 addresses the timing of granting an injunction, stating that "[t]he injunction may be granted at the time of commencing the action, or at any time afterwards, *before judgment in that proceeding*." (Emphasis added.) This statute appears to prohibit post-judgment injunctions. Here, the trial court entered its order restricting contact over a year after entering its bench trial orders and judgment.

We hold that the trial court did not have authority under chapter 7.40 RCW to enter the October 2015 order restricting Dunn's contact with the Bowers.

3. Equitable Authority

The Bowers also argue that the trial court had equitable authority to restrict Dunn's contact with them even in the absence of statutory authority. Dunn does not dispute the trial court's equitable authority to enter an injunction, but argues that chapter 7.40 RCW provides the only criteria under which an injunction can be issued.[5] We hold that although the trial court had

---

[5] Dunn also argues that the trial court could not impose the no-contact provision because the Bowers did not request that relief in their complaint or at trial. But the nature of the requested

10

equitable authority apart from RCW 7.40.020 to issue an injunction restricting contact, the Bowers were not entitled to equitable relief because they had an adequate statutory remedy.

      a.    Equitable Grounds for Injunction

Article IV, section 6 of the Washington Constitution gives trial courts authority to fashion equitable remedies. *Weidert*, 172 Wn. App. at 109. Trial courts have "broad discretionary power" regarding equitable remedies. *SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). Such equitable remedies include injunctive relief. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). "Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case before it." *Hoover v. Warner*, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015).

There are three criteria for granting injunctive relief: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) acts that either are resulting in or will result in actual and substantial injury. *Kucera*, 140 Wn.2d at 209. However, "*injunctive relief will not be granted* where there is a plain, complete, speedy and adequate remedy at law." *Id.* (emphasis added).

Here, the Bowers had a clear statutory remedy for Dunn's conduct under chapter 10.14 RCW, which provides a procedure for obtaining a protection order in cases of unlawful

---

relief does not necessarily limit the trial court's equitable authority. *See Brazil v. City of Auburn*, 93 Wn.2d 484, 496, 610 P.2d 909 (1980). "[O]nce a court of equity has properly acquired jurisdiction over a controversy, such a court can and will grant whatever relief the facts warrant." *Id.*

harassment.[6]  RCW 10.14.040(1) and (2) allow a person subjected to harassment to petition for

relief regardless of whether there is a pending lawsuit or other action between the parties.  If after

a hearing the court finds by a preponderance of the evidence that unlawful harassment exists, the

court shall issue a "civil antiharassment protection order" prohibiting such harassment.  RCW

10.14.080(3).  A protection order normally cannot be effective for more than one year.  RCW

10.14.080(4).  But the court can issue the protection order for a term longer than a year or

permanently if it finds that the respondent is likely to resume unlawful harassment when the

order expires.  RCW 10.14.080(4).  And the willful violation of a protection order subjects the

respondent to criminal penalties and contempt of court sanctions.  RCW 10.14.120.

In addition, an antiharassment protection order can be obtained quickly.  A temporary

protection order can be issued ex parte upon filing the petition.  RCW 10.14.080(1).  A full

hearing on the petition must be scheduled within 14 days after issuance of the temporary order or

within 24 days if the respondent is served by publication.  RCW 10.14.080(2).

Obtaining an antiharassment protection order under chapter 10.14 RCW is a plain,

complete, speedy, and adequate remedy at law.[7]  Therefore, we hold that injunctive relief was

not available to the Bowers.

---

[6] One of the declarations filed in 2014 stated that the Bowers had petitioned for an
antiharassment protection order in the district court.  But the record does not reflect what
happened with that petition.

[7] In *Hough v. Stockbridge*, the Supreme Court stated that "an action under chapter 10.14 RCW is
an action in equity."  150 Wn.2d 234, 236, 76 P.3d 216 (2003).  However, that case involved
whether, when one party requested relief under chapter 10.14 RCW, the district court could
exercise equitable authority to make the protective order mutual.  *Id.* at 235-36.  We view *Hough*
as recognizing that although chapter 10.14 RCW provides a statutory legal remedy, within the
context of a chapter 10.14 RCW petition the court can act in equity.  That rule does not apply

    4.    Conclusion

Under the facts of this case, the trial court did not have authority under chapter 7.40 RCW to enter an injunction restricting Dunn's contact with the Bowers. And the trial court could not exercise its equitable power to grant injunctive relief because there was a plain, complete, speedy, and adequate remedy at law. Accordingly, we hold that the trial court erred in entering the October 2015 order restricting contact.[8]

B.    ROAD MAINTENANCE ORDER

Dunn argues that (1) the trial court lacked the authority to enter the road maintenance order because portions of the order created obligations between the parties not contained in the express easement and to which they did not agree, (2) portions of paragraphs 1.1 and 1.7 in the road maintenance order are unsupported by substantial evidence, and (3) the trial court exceeded its authority by applying the road maintenance order to nonparties. We hold that the trial court had equitable authority to enter most of the provisions of the road maintenance order, but erred in including certain provisions and in applying the order to nonparties. We also hold that the appropriate remedy is to remand for the trial court to revise the order consistent with our opinion.

---

here because the trial court's order restraining Dunn's contact with the Bowers was not entered in the context of a chapter 10.14 RCW petition.

[8] Here, the trial court did not include an order restricting Dunn's contact with the Bowers as part of its ruling following the bench trial. Therefore, we do not address whether the trial court had authority under chapter 7.40 RCW or equitable authority to issue such an order at that time.

1.  Authority to Enter Order

The Bowers argue that the trial court had equitable authority to enter the road maintenance order. Similarly, the trial court suggested that it was entering the order under its "inherent authority." CP II at 113.

As noted above, a trial court has broad authority to fashion equitable remedies. *SAC Downtown*, 123 Wn.2d at 204. Here there is no adequate legal remedy for determining the parties' rights and responsibilities regarding road maintenance. In addition, RCW 7.24.010 states, "Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

However, the trial court's authority to declare the parties' rights and responsibilities has limits. "A court cannot, based on general considerations of abstract justice, make a contract for parties that they did not make for themselves." *Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 573, 161 P.3d 473 (2007). Similarly, "[i]t is unthinkable that courts should undertake the writing of contracts for [parties] who have failed or refused, rightly or wrongly, to come to terms between themselves." *Haire v. Patterson*, 63 Wn.2d 282, 287, 386 P.2d 953 (1963).

Two Washington cases support a trial court's equitable authority to issue some form of road maintenance order: *Bushy v. Weldon*, 30 Wn.2d 266, 191 P.2d 302 (1948), and *Buck Mountain Owners' Ass'n v. Prestwich*, 174 Wn. App. 702, 308 P.3d 644 (2013).[9]

In *Bushy*, the court addressed a neighbor dispute involving the use of a common driveway. 30 Wn.2d at 267. The court affirmed the trial court's decree that each party was

---

[9] The trial court also referenced four cases from other jurisdictions, a law review article, and the *Restatement (Third) of Prop.: Servitudes* (2000).

required to pay half the maintenance expenses for the driveway and were required to park their

cars at least 10 feet away from an archway at the beginning of the driveway. *Id.* at 271-72.

Regarding the parking restriction, the court stated,

> The direction concerning the parking of the cars was brought about by appellant's
> action in parking his car on the driveway in such manner as to exclude respondent's
> use of the driveway and of her garage. The court's decree concerning the upkeep
> of the driveway was made in the interests of both parties. It applied a proper rule
> of simple justice, and precludes litigation in the future.

*Id.* at 272.

In *Buck Mountain*, a homeowners' association (HOA) sought recovery of road

maintenance assessments against neighboring, nonmember property owners who jointly used a

shared road easement along with HOA members. 174 Wn. App. at 707-08. The easement was

silent on the issue of road maintenance. *Id.* at 709. The trial court ordered the property owners

to pay past-due road maintenance costs and to execute and record a road maintenance agreement

obligating them to pay a fixed percentage of future HOA assessments. *Id.* at 712.

On appeal, the court affirmed the trial court's cost-sharing order, ruling that *Bushy* was

controlling authority. *Id.* at 716. The court stated that *Bushy* "affirmed the trial court's exercise

of its inherent equity power to resolve a cost-sharing dispute between users of a shared driveway,

premised on basic rules of fairness." *Id.* In addition, the court found persuasive numerous cases

from other jurisdictions that were "consistent with *Bushy*'s application of equity in requiring

common road easement users to share road maintenance expenses" and supported the court's

"equity power to impose reasonable road maintenance obligations where no agreement exists."

*Id.* The court also quoted the *Restatement (Third) of Property: Servitudes* § 4.13(3) (2000),

15

which states that joint use of an easement gives rise to an obligation to contribute jointly to repair and maintenance costs. *Id.* at 718.

However, the court was "troubled" by the trial court's requirement that the property owners sign and record a road maintenance agreement. *Id.* at 727. The agreement, among other provisions, obligated the property owners to pay HOA assessments and created a lien upon the land for unpaid assessments. *Id.* The court held that the trial court erred in requiring the owners to execute the agreement. *Id.* at 728.

Under *Buck Mountain*, the trial court here could not require Dunn to execute the proposed road maintenance agreement. On the other hand, *Bushy* and *Buck Mountain* are clear that the trial court had equitable authority to require the parties to the litigation to share equally in road maintenance costs. *Bushy*, 30 Wn.2d at 272; *Buck Mountain*, 174 Wn. App. at 716. Finally, *Bushy* indicates that the trial court had equitable authority to impose requirements to ensure unobstructed use of the easement road. 30 Wn.2d at 272.

2.    Analysis of Specific Provisions

Dunn does not dispute that the trial court had authority to determine that the parties must share road maintenance costs as provided in the easement itself. However, he argues that the trial court did not have authority to order compliance with specific rules regarding the road that are not contained in the easement.

As noted above, the standard for review for a trial court's exercise of equitable authority is abuse of discretion. *Weidert*, 172 Wn. App. at 110. But "[w]hether an obligation exists to contribute to costs reasonably incurred for repair and maintenance of a road easement used in common is a question of law we review de novo." *Buck Mountain*, 174 Wn. App. at 714. Based

16

on this general principle, we will review de novo the trial court's ability to impose obligations on the parties regarding road maintenance.

First, the road maintenance order stated that "[a]ll parties shall equally share in the expenses for normal maintenance and repair." CP II at 116 (paragraph 2.1). This requirement did little more than restate the easement language. We hold that the trial court had authority to impose this requirement under *Bushy* and *Buck Mountain*.

Second, the order stated that "[m]aintenance for the road due to weather and normal wear and tear may be initiated when 4 of the 5 property owners agree to do so." CP II at 116 (paragraph 2.1). The order further provided that the cost for "agreed" maintenance and repair shall be shared equally. CP II at 116 (paragraph 2.3). Dunn apparently objects to these provisions because the order established a process where the parties can agree by majority vote to undertake maintenance that could be different than the "normal" maintenance and repair referenced in the easement. However, we hold that these provisions are similar enough to provisions allocating maintenance costs that they fall within the rule of *Bushy* and *Buck Mountain*.

Third, the order contained provisions clearly designed to ensure unobstructed use of the road. The order stated that (1) the road "shall be kept free of chuck holes, traffic calming devices, debris, vegetation, landscaping, and other obstructions," CP II at 116 (paragraph 2.1); (2) the speed limit on the road would be 10 miles per hour (paragraph 2.2); (3) the other parties must be notified if utility work necessitates breaking the road surface (paragraph 2.4); and (4) if a parcel owner damages the road, the road surface must immediately be restored to its previous

condition (paragraph 2.5). We hold that the trial court had authority to impose these requirements under *Bushy*.

Fourth, the order contained provisions not directly related to unobstructed use of the road. The order (1) stated that "[n]o one shall be allowed to park any vehicle anywhere on the easement road for more than 7 days," CP II at 116 (paragraph 2.1), and (2) provided a process for agreeing to and paying for road signs (paragraph 2.6). We hold that because these provisions did not address an obstruction to the use of the easement road, the trial court did not have authority to impose them.

Fifth, the order stated that "[d]isputes arising over repair expenses will be decided by the Court," CP II at 116 (paragraph 2.3), and more generally stated that disputes concerning any aspects of costs will be decided by the trial court by way of motion (paragraph 2.7). This provision is consistent with the trial court's authority to allocate maintenance and repair costs among the parties. We hold that the trial court had authority to mandate that disputes regarding costs would be decided by that court.

3.    Challenged Findings of Fact

Dunn argues, and the Bowers essentially concede, that portions of paragraphs 1.1 and 1.7 in the road maintenance order were unsupported by substantial evidence. The trial court found in paragraph 1.1 that parcel number 0520177110 used the private roadway for ingress and egress. Parcel number 0520177110 was owned by the parties' neighbors, the Joneses, and there is no evidence in the record that the Joneses used the easement. Therefore, this finding of fact was not supported by substantial evidence.

The trial court found in paragraph 1.7 that "lots 3 and 4 of Short Plat 77-606 were divided to create 4 lots." CP II at 115. The record shows that the original lots 3 and 4 were subdivided into a total of *five* lots. Therefore, this finding of fact also was not supported by substantial evidence.

4.    Applying the Road Maintenance Order to Nonparties

Dunn argues, and the Bowers essentially concede, that the trial court did not have authority to apply the road maintenance order to the Lewises and Joneses because they were not parties to the lawsuit.

The road maintenance order expressly outlined "the rights, duties and obligations of all parties to the easement," CP II at 114, which at that point included the Lewises after they had purchased the Cobbs' property. But neither party disputes that the Lewises were not parties to the lawsuit. Further, paragraph 2.3 stated that the "cost for agreed maintenance and repair shall be borne and shared equally by the owners of the parcels identified in Exhibit A." CP II at 116. Exhibit A lists parcel number 0520177110, which was owned by the Joneses. The Joneses were not a party to the lawsuit.

A trial court generally has no authority to apply an order to a person who is not a party to the litigation. *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 502, 909 P.2d 1294 (1996). We hold that the trial court had no authority to apply the order to the Lewises or to the Joneses.[10]

---

[10] The Bowers represent that the Lewises and Joneses have agreed to be bound by the order. But although the parties may contract separately among themselves, the trial court has no authority to bind nonparties to the order's provisions.

5.    Remedy

Dunn argues that because the road maintenance order contains erroneous provisions, we should vacate the entire order. The Bowers argue that we should remand for the court to modify the order to correct any errors. We agree with the Bowers. The trial court had authority to enter some type of road maintenance order and the few erroneous provisions are not material to the remainder of the order.

On remand, the trial court should (1) strike the parking limitation in paragraph 2.1 and the entire paragraph 2.6, (2) revise paragraph 1.1 to remove any reference to the Joneses' property, and (3) revise paragraph 1.7 to reflect that the original lots 3 and 4 were subdivided into a total of five lots instead of four.

In addition, removing the Lewises and Joneses from the order will require changes to several paragraphs. For example, paragraph 2.1 referred to "all parties referenced above," CP II at 115, and "property owners." CP II at 116. Paragraph 2.1 also stated that four of the five owners, which included the Lewises and Joneses, could agree to initiate maintenance. Paragraph 2.3 stated that maintenance and repair costs shall be shared equally "by the owners of the parcels identified in Exhibit A," which included the Lewises and Joneses, and that each parcel was responsible for a one fifth share of maintenance expenses. CP II at 116. The trial court should make any other revisions necessary to clarify that the order does not apply to the Lewises and Joneses.

CONCLUSION

We affirm in part, reverse in part, and remand to the trial court with instructions to (1) vacate the no-contact provision in the October 2015 order, and (2) modify the road maintenance order consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
LEE, J.

_____
MELNICK, J.